KENNETH POLVERARI ET AL. *v.*
WILLIAM T. PEATT, JR., ET AL.
(10626)

DUPONT, C. J., HEIMAN and FREEDMAN, Js.

Argued June 3—decision released September 15, 1992

*Alan R. Spirer,* for the appellants-appellees (defendants).

*Louis Ciccarello,* with whom was *Walter G. Ryba,* for the appellees-appellants (plaintiffs).

HEIMAN, J. The defendants in this commercial real estate dispute appeal from the trial court's judgment awarding the plaintiffs damages for unjust enrich-

ment.[1] They claim that the trial court (1) improperly awarded damages for unjust enrichment even though it found that an express contract that had not been breached existed among the parties, (2) incorrectly determined that the plaintiffs had satisfied their burden of proof regarding unjust enrichment, (3) incorrectly found that the clean hands doctrine did not preclude the plaintiffs from obtaining equitable relief, (4) incorrectly calculated the amount of damages, (5) incorrectly found that the plaintiffs had not acted to the defendants' detriment by renegotiating a lease on certain commercial property owned by the defendants, and (6) improperly denied their request for an injunction directing the plaintiffs to release certain agreements that had been recorded on the Danbury land records.

The plaintiffs cross appeal, claiming that the trial court improperly calculated their damages by (1) reducing the damages award by $14,096.47, an amount equal to certain mortgage payments on the subject parcel, (2) reducing the damages award by $54,826.08, an amount equal to real estate taxes paid on the parcel, and (3) failing to include $60,000, an amount equal to funds that the partners spent to comply with an environmental permit. We affirm the trial court's judgment in all respects.

The trial court reasonably found the following facts, which are necessary to resolve both the appeal and the cross appeal. The individual defendant, William T. Peatt, Jr., was at all times pertinent to this case the president and sole stockholder of the corporate defendant, Sugar Hollow Park, Incorporated (Sugar Hollow Park). In the mid 1960s, Sugar Hollow Park acquired a 14.8 acre parcel of land with eight vacant buildings on Sugar Hollow Road in Danbury. On July 11, 1984,

---

[1] The plaintiffs in this action are Kenneth Polverari, Vincent C. Pannozzo, Anthony Tucciarone and the Sugar Hollow Park Partnership. The defendants are William T. Peatt, Jr., and Sugar Hollow Park, Inc.

Sugar Hollow Park received permission from both the Danbury planning and zoning commission and the Danbury environmental impact commission to construct a 15,000 square foot building on the parcel. The environmental impact commission permit was granted subject to certain conditions regarding Sugar Hollow Park's grading and filling a pond on the parcel. On June 10, 1985, however, the expiration date of the environmental impact commission permit, the work on the pond had not yet commenced. Peatt, tired of operating and managing the parcel, listed the parcel for sale for $1,800,000.

The plaintiffs Kenneth Polverari, Vincent C. Pannozzo and Anthony Tucciarone, experienced real estate investors, wanted to purchase the parcel. Although they lacked the $1,800,000 that Peatt was asking, they knew of a prospective tenant, Linde Homecare Medical Systems (Linde), that was interested in relocating its offices. On August 1, 1985, after some preliminary negotiations, Polverari, Pannozzo, Tucciarone and Peatt entered into a written "agreement in principle" (preliminary agreement), under which they declared their intention, "subject to their being able to agree on the terms and conditions of final agreements governing [the] transaction, to enter into a joint venture" to purchase, develop and either rent or sell the property. The preliminary agreement also contained the following provisions. The signatories would form a partnership at some unspecified time in the future for the purpose of carrying out the aforementioned activities. Sugar Hollow Park would convey the parcel to the partnership for $1,350,000, to be paid by the signatories' assuming $550,000 in mortgages on the property and signing a five year $800,000 promissory note, at 9 percent interest, in favor of Sugar Hollow Park. Principal on the note was to be paid periodically, in amounts and under conditions to be agreed on in the final agreement.

Finally, Polverari, Pannozzo and Tucciarone were to pay Sugar Hollow Park $70,000 for an option to purchase the parcel.

Prior to executing any additional agreements, the four signatories, with Peatt acting as a consultant, began managing the parcel. Each borrowed $15,000 from the Union Trust Company to improve the pond area in accordance with the environmental impact commission permit.

On November 13, 1985, the signatories to the preliminary agreement entered into a written partnership agreement (partnership agreement), thereby creating the plaintiff Sugar Hollow Park Partnership (partnership). The agreement provided that Polverari, Pannozzo, Tucciarone and Peatt were equal partners in the partnership and that the business of the partnership would be to own, develop, invest in, operate, lease, manage and/or sell the parcel. Sugar Hollow Park, however, never conveyed the parcel to the partnership. Although both the mortgage deed and the note were prepared, neither was executed. Nonetheless, the plaintiffs commenced paying interest on the $800,000 note on September 4, 1985.

On March 1, 1984, the DownUnder Restaurant, a tenant of a building located on the parcel, entered into a ten year lease with Sugar Hollow Park. Pannozzo and Polverari purchased the restaurant in the fall of 1985 and sold it to Akre's, Incorporated (Akre's), in April, 1987. Sugar Hollow Park and Akre's then executed a seven year lease, which was negotiated by Polverari and Pannozzo. Although the new lease required rental payments that were lower than those paid by the DownUnder Restaurant, it, unlike the prior lease, granted Akre's an option to extend the lease term for an additional three years.

In 1985, Linde decided not to relocate to the parcel. Despite this setback, the partnership continued to manage the parcel and seek mortgage financing and buyers. Peatt refused to sign a proposed sales contract with one potential buyer because the buyer's offer was below the $2,900,000 listing price for the property and the offer was made contingent on zoning approval for the construction of a trailer park, a condition that Peatt felt could not be satisfied because of the parcel's insufficient septic system capacity.

On October 14, 1987, Polverari, Tucciarone and Peatt obtained a $675,000 mortgage commitment from the Village Bank. The plaintiffs claimed that this mortgage was needed to pay the existing mortgages on the property, as well as the loans made to the partnership by the individual partners, a $15,000 debt to the Union Trust Company, and development and engineering expenses. Pannozzo's name was not on the mortgage commitment because he expressed a desire to leave the partnership. Peatt refused to sign the commitment because (1) it did not involve a construction mortgage, (2) he feared that because the mortgage would be used to purchase the property, the partnership would have to obtain yet another mortgage to develop the parcel, and (3) he felt that a bank would insist that the development mortgage be subordinated to his prior $800,000 mortgage.

In April, 1988, the plaintiffs recorded both the preliminary agreement and the partnership agreement on the Danbury land records. In June, 1988, Polverari, Pannozzo and Tucciarone, with Peatt abstaining, voted to dissolve the partnership. At that time, the parcel had been neither developed nor transferred to the partnership as contemplated by the signatories to the partnership agreement.

Between August 1, 1985, and June 10, 1988, the partnership had cash receipts totaling $552,315.23 and disbursements of $551,551.52, resulting in a cash balance of $763.71. As part of these cash receipts, Polverari, Pannozzo and Tucciarone loaned the partnership $134,200, with Pannozzo contributing $20,000, Polverari contributing $57,700 and Tucciarone contributing $56,500. At the time that the trial court rendered its judgment, the partnership still had unpaid bills totaling $24,027.

From September 4, 1985, through December 7, 1987, when the payments on the $800,000 note ceased, the partnership paid $165,000 in interest payments to Peatt on the note. Between August 8, 1985, and June 10, 1988, the partnership paid $216,213.19 toward the three mortgages on the property, reducing the principal on the three mortgages by $15,000. The partnership, however, failed to pay $14,096.47 in mortgage payments due during May and June, 1988. Peatt paid $54,826.08 in real estate taxes on the parcel and $3041.06 for attorney's fees incurred by the partners between August, 1985, and June 10, 1988.

In 1988, the plaintiffs commenced suit against the defendants, who responded by filing an answer and a counterclaim. On August 27, 1991, the trial court rendered judgment for the plaintiffs on the third count of their revised complaint, in which the plaintiffs sought damages for unjust enrichment. The trial court ordered the defendants to pay $243,000.10 into an account, to be disbursed as follows: $24,027 to satisfy miscellaneous partnership debts, $41,193.28 to Pannozzo, $77,693.27 to Tucciarone, $78,893.27 to Polverari and $21,193.27 to Peatt.

The trial court arrived at these figures as follows. The court began by finding that the defendants should pay back the $165,000 in interest payments received

relative to the $800,000 note. To this sum, the court added $15,000, representing the reduction of principal on the three existing mortgages during the period between August 1, 1985, to June 10, 1988, and $763.71, the balance remaining in the partnership. From this subtotal of $180,763.71, the trial court subtracted $71,963.61, which consisted of $14,096.47 in mortgage payments due on the three existing mortgages that were not paid by the partnership from May to June, 1988, $3041.06 paid by Peatt as attorney's fees for matters concerning the parcel and $54,826.08 paid by Peatt to the city of Danbury for real estate taxes on the parcel, leaving a balance of $108,800.10. From this amount, the court ordered the payment of $24,027 to satisfy miscellaneous partnership debts and $21,193.28 to Peatt, the amount he loaned to the partnership. The court divided the remaining $63,579.82 equally among Pannozzo, Tucciarone and Polverari. In addition to his $21,193.28 share of this figure, Pannozzo received $20,000, the amount he loaned to the partnership, for a total award to Pannozzo of $41,193.28. In addition to his $21,193.27 share of the $63,579.82 subtotal referred to above, Tucciarone received $56,500, the amount he loaned to the partnership, for a total award of $77,693.27. In addition to his $21,193.27 share of the $63,579.82 subtotal, Polverari received $57,700, the amount he loaned to the partnership, for a total award of $78,893.27.

The trial court also ordered the plaintiffs, upon receiving these disbursements, to file on the Danbury land records whatever releases were necessary to remove any encumbrances attributable to their recording of the preliminary and partnership agreements.

This appeal and cross appeal followed.

I

The defendants argue first that the trial court incorrectly granted the plaintiffs equitable relief despite find-

ing that the parties had entered into an express contract that had not been breached. We disagree.

" '[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations.' *H. B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 346–47, 446 A.2d 1 (1982); see also 42 C.J.S., Implied Contracts § 34. Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment; *United States Fidelity & Guaranty Co.* v. *Metropolitan Property & Liability Ins. Co.,* 10 Conn. App. 125, 127, 521 A.2d 1048, cert. denied, 203 Conn. 806, 525 A.2d 521 (1987); 12 S. Williston, Contracts (3d Ed. Jaeger) § 1478; at least in the absence of a breach of the contract by the defendant; *Rabinovitz* v. *Marcus,* 100 Conn. 86, 95–96, 123 A. 21 (1923); 3 Restatement (Second), Contracts § 373, comment a; J. Calamari & J. Perillo, Contracts (2d Ed.) § 15-3; a nonwillful breach by the plaintiff; *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 505–10, 435 A.2d 1022 (1980); *Stabenau* v. *Cairelli,* 22 Conn. App. 578, 581, 577 A.2d 1130 (1990); or a mutual rescission of the contract. *Pierce* v. *Staub,* 78 Conn. 459, 466, 61 A. 760 (1906)." *Feng* v. *Dart Hill Realty, Inc.,* 26 Conn. App. 380, 383, 601 A.2d 547, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992).

The trial court expressly found that the parties entered into two contracts—the preliminary agreement and the partnership agreement. The existence of neither of these contracts, however, precluded the trial court from granting the plaintiffs equitable relief because the equitable relief granted was not inconsistent with either of the two contracts. Indeed, neither agreement obligated any of the parties to do anything at all. The preliminary agreement specifically stated that it was "not intended to obligate any party to proceed should such party at any time decide, for any reason, prior to the signing of a definitive agreement, that to so proceed would not be in his best interests."

The partnership agreement also did not give rise to any obligations on the part of the parties. Although the agreement was signed by the parties and was binding, the trial court reasonably could have concluded that the parties intended that the transfer of title to the partnership be a condition precedent to the parties' obligations under the partnership agreement. See *Pullman, Comley, Bradley & Reeves* v. *Tuck-it-away Bridgeport, Inc.,* 28 Conn. App. 460, 468, 611 A.2d 435 (1992); *Bauman & Garrity of Lakeville, Inc.* v. *George E. Emerson, Inc.,* 14 Conn. App. 261, 265, 540 A.2d 710 (1988). Thus, the trial court reasonably could have concluded that the parties' obligations under the contract did not come into existence because the passing of title to the partnership, a condition precedent to the parties' obligations under the partnership agreement, did not occur.

Because the trial court's award of damages for unjust enrichment was not inconsistent with the preliminary agreement or the partnership agreement, the defendants cannot prevail on this claim.

## II

The defendants next assert that the trial court incorrectly found that the plaintiffs had proven the elements of their unjust enrichment claim. We do not agree.

"The right of recovery for unjust enrichment is equitable, 'its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.' *Schleichler* v. *Schleichler,* 120 Conn. 528, 534, 182 A.2d 162 (1935)." *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597, 489 A.2d 1034 (1985). Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564, 244 A.2d 404 (1968). Plaintiffs seeking recovery for unjust enrichment must

prove "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Bolmer* v. *Kocet,* 6 Conn. App. 595, 612-13, 507 A.2d 129 (1986).

The defendants claim that the plaintiffs failed to prove that the defendants' retention of $165,000 in monthly interest payments made by the plaintiffs was unjust. Whether the payments were unjust is an issue of fact. *Stabenau* v. *Cairelli,* supra, 581. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221-22, 435 A.2d 24 (1980). On appeal, we must give the evidence the most favorable construction in support of the judgment to which it is entitled. *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 160, 510 A.2d 440 (1986).

The trial court's findings of fact and the conclusions that it drew from those findings are supported by the evidence and are not clearly erroneous. The purpose of the $800,000 note, which generated the disputed interest payments, was to secure the transfer of the parcel from Sugar Hollow Park to the new partnership. The trial court could reasonably have concluded that because the defendants allowed themselves to become enriched by accepting the interest payments on the note but refused to allow the parcel to be transferred to the partnership in accordance with the parties' expectations, the defendants' retention of the interest payments on the note was unjust.

The defendants cannot prevail on this claim.

### III

The defendants next assert that the trial court incorrectly found that the clean hands doctrine did not preclude the plaintiffs from obtaining equitable relief. We do not agree.

"One who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. *Cohen* v. *Cohen,* 182 Conn. 193, 201, 438 A.2d 55 (1980)." *Sachs* v. *Sachs,* 22 Conn. App. 410, 416, 578 A.2d 649 (1990). The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. *DeCecco* v. *Beach,* 174 Conn. 29, 35, 381 A.2d 543 (1977). The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked. Id.

The defendants claim that the plaintiffs come into equity with unclean hands in two respects. First, they claim that the fact that the rental income from the property declined during the period that the plaintiffs managed the premises indicates that the plaintiffs mismanaged the property. Second, they claim that the plaintiffs acted in bad faith and abdicated their duty to manage the parcel when they voted in June, 1988, to terminate the partnership.

The trial court specifically found that the decline in rental income from the property was not due to bad faith on the part of the plaintiffs and that the plaintiffs used their best efforts to develop the parcel. Our review of the record indicates that these findings were not clearly erroneous. See *Stabenau* v. *Cairelli,* supra. Further, nothing in the record supports the defendants' argument that the termination of the partnership was

improper. Indeed, the partnership agreement explicitly provides that the partnership may be terminated upon a written request of partners owning 75 percent of the equity interests in the partnership.

The defendants' claims are without merit.

## IV

The defendants next argue that the trial court incorrectly included $134,000, the value of loans that the plaintiffs made to the partnership, in its calculation of damages for unjust enrichment. We are not persuaded.

The right of recovery for unjust enrichment is rooted in the equitable principle that it is contrary to " 'equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.' " *National CSS, Inc.* v. *Stamford,* supra, 597; *Schleicher* v. *Schleicher,* supra; *Garwood & Sons Construction Co.* v. *Centos Associates Limited Partnership,* 8 Conn. App. 185, 187, 511 A.2d 377 (1986). " 'This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did he [the party liable], to the detriment of someone else, obtain something of value to which he was not entitled?' (Citations omitted.) *Franks* v. *Lockwood,* [146 Conn. 273, 278, 150 A.2d 215 (1959).]" *Burns* v. *Koellmer,* 11 Conn. App. 375, 384, 527 A.2d 1210 (1987). In calculating restitution damages, the trial court balances the equities of the parties to determine where the loss should fall. *Cecio Bros., Inc.* v. *Greenwich,* supra, 564–65. This balancing of equities is a matter within the trial court's broad discretion. *Kimbrell* v. *Rossitto,* 6 Conn. App. 638, 655, 507 A.2d 120 (1986).

The defendants argue that the trial court's order directing them to repay the plaintiffs the money that the plaintiffs loaned the partnership compensates the plaintiffs not only for the benefit received by the defendants but also for the losses sustained by the plaintiffs. Our review of the record indicates that the trial court acted within its discretion when it determined that the defendants were benefitted by the $134,200 loaned to the partnership by Pannozzo, Polverari and Tucciarone. The record reasonably supports a conclusion that the loans were made in order to maintain and service the long term debt on the parcel, which continued to be owned by the defendants. Thus, the trial court could reasonably have concluded that the money was obtained by the defendants, to the detriment of Pannozzo, Polverari and Tucciarone.

The defendants cannot prevail on this argument.

V

The defendants next claim that the trial court incorrectly found that the plaintiffs had not acted to the defendants' detriment by renegotiating the lease for the premises occupied by the DownUnder Restaurant. We do not agree.

The defendants argue that the trial court should have deducted $73,391.74, an amount equal to the reduced rental income under the renegotiated lease, from its award of damages. They do not contest either the trial court's finding that Peatt signed the new lease on behalf of Sugar Hollow Park or its finding that the plaintiffs did not renegotiate the lease to the defendants' detriment. Rather, they argue that because they were ordered to repay funds received by the partnership, less the losses that they sustained, the reduction in rental income should have been considered a loss that was deducted from the trial court's unjust enrichment award. It should be noted that the rental payments

made before the partnership was dissolved were included in the cash receipts of the partnership, which the court distributed equally between the four partners.

As we noted earlier, the trial court is vested with broad discretion in balancing the equities of the parties for the purpose of calculating restitution damages. *Cecio Bros., Inc.* v. *Greenwich,* supra; *Kimbrell* v. *Rossitto,* supra. In light of the trial court's undisputed finding that Peatt signed the renegotiated lease on behalf of Sugar Hollow Park, the trial court acted within its discretion when it determined that the equities of this case dictated that the partnership absorb any losses attributable to the lease before the partnership was dissolved, and that Sugar Hollow Park alone be responsible for any losses attributable to the lease after the partnership was dissolved.

The defendants' claim is without merit.

## VI

The defendants' final claim is that the trial court improperly denied their request for an injunction directing the plaintiffs to release both the preliminary and partnership agreements from the Danbury land records. We disagree.

The trial court, in its judgment, ordered the plaintiffs to release the agreements upon receiving the payments specified in the judgment. Thus, the defendants appear to contest the trial court's deferring the releases until they have satisfied their financial obligations under the judgment. As we have repeatedly noted, the trial court is afforded broad discretion in fashioning an equitable remedy. See, e.g. *Cecio Bros., Inc.* v. *Greenwich,* supra; *Kimbrell* v. *Rossitto,* supra. The trial court's orders, which served to provide an incentive to the defendants to satisfy their obligations under the

judgment forthwith, did not constitute an abuse of this considerable discretion.

The defendants' claim is without merit.

## VII

In their cross appeal, the plaintiffs argue that the trial court incorrectly computed the amount of damages to which they were entitled. Specifically, they argue that the trial court (1) should not have reduced the damages award by $14,096.47, an amount equal to mortgage payments that became due on the three mortgages on the parcel between February, 1988, and June, 1988, (2) should not have reduced the damages award by $54,826.08, an amount equal to real estate taxes paid on the property, and (3) should have included in its damages award $60,000, an amount equal to funds that the partners spent to comply with the environmental impact commissions permit. We disagree with each of the plaintiffs' claims.

As we have previously stated, the amount of damages for unjust enrichment rests within the trial court's sound discretion. *National CSS, Inc.* v. *Stamford,* supra. Unjust enrichment is, consistent with its equitable nature, a broad, flexible remedy that allows the trial court to award that sum of money that the court deems just under the particular circumstances of the case. *Cecio Bros., Inc.* v. *Greenwich,* supra. The amount of damages to be awarded depends on the degree to which one party wrongfully has retained a benefit to the detriment of another.

The plaintiffs bear the burden of establishing, on their cross appeal, that the trial court abused its discretion in calculating damages. Our review of the record convinces us that the trial court did not abuse its discretion in calculating damages. The trial court reasonably could have concluded that the mortgage and tax pay-

ments were paid by the defendants for the benefit of all of the partners, and therefore, that equity demanded that all partners share in these expenses. Similarly, the trial court reasonably could have concluded that the defendants neither uniquely benefited from nor retained the funds that the partners spent in order to keep the environmental impact commission permit in effect during the period of the partnership.

Accordingly, the cross appeal is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.