[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter commenced when the plaintiff filed her complaint with the court on October 22, 1993 with a return date of November 2, 1993. The complaint is in four counts alleging a breach of contract, creation of constructive trust, unjust enrichment and seeking to quiet title to the subject premises. The defendant filed her answer and a special defense, dated March 8, 1994. The plaintiff filed a reply to the special defense dated March 15, 1994. The plaintiff in this matter is Eleanor Spring Landry and the defendant is Ann B. Teti. The matter involved properties in the Towns of Prospect and Mansfield in the state of Connecticut. The Prospect land consists of three separate pieces. Both the plaintiff and defendant testified in this matter. The defendant also filed an amended answer, dated October 13, 1994, and an amendment to the special defenses, dated October 14, 1994.
The plaintiff testified that she met the defendant in CT Page 12191-BB approximately 1981, and thereafter then became very good friends. She stated that they were like sisters. According to the plaintiff, her father owned a fifty per cent interest in three parcels of land in Prospect, Connecticut, which he conveyed to her by quit claim deed on August 20, 1980. (Exhibit 9) The plaintiff's father died on November 26, 1980. The plaintiff's uncle, Albert G. Spring, owned the remaining fifty per cent interest in said property. This property in Prospect consisted of three pieces, namely 47 Spring Road, 48 Spring Road and 133 Salem Road. The property at 47 Spring Road consisted of 17.6 acres of land with a house constructed thereon. That house was the plaintiff's family homestead. The property at 48 Spring Road consisted of 2.9 acres of land with a 680 square foot garage constructed thereon. The property at 133 Salem Road consisted of 3.2 acres of land. The property in Mansfield, Connecticut is a lot with a home constructed thereon, and was the plaintiff's former marital home.
The plaintiff testified that sometime prior to November 1985, she received a letter from a construction company, stating that they were interested in purchasing the sand and gravel from CT Page 12191-CC her Prospect property. She testified that there was sand and gravel on her property that was worth $2,000,000.00, and that she would have received $45,000.00 per month for it until said sand and gravel was exhausted. Mrs. Landry testified she showed the letter she received from the construction company to Father Edward Nadolny. She then testified that Father Nadolny lent her $160,000.00 from a sunshine fund he administered. This loan was evidenced by a promissory note which is Exhibit A. However, this note was not secured by any mortgage or other security. The plaintiff testified she used this money to purchase the fifty (50%) per cent ownership interest of her uncle, Albert G. Spring, in the Prospect property. Thus, she was now the sole owner of the Prospect property. Next, she applied to the Town of Prospect for a permit to mine or remove sand and gravel from her property. The town refused this permit and as a result, the proposed sale of sand and gravel to the aforementioned construction company never took place. At this point, apparently Father Nadolny asked the plaintiff for payment of the aforesaid note, which was due and payable in full two years from its date, which would be on or before November 19, 1987. Said promissory note carried no interest. The plaintiff did not have any money to CT Page 12191-DD pay Father Nadolny. The plaintiff and defendant both testified that the defendant then lent the plaintiff the sums of $23,000.00 and $1,000.00 on two occasions, which sums were then paid to Father Nadolny by the plaintiff, leaving a balance due him of $136,000.00, which amount is still outstanding. The plaintiff testified that she and the defendant were going to go into business together and start an old age home on the family homestead property. The plaintiff testified that at this time, the defendant recommended to her that she (plaintiff) should quit claim her property to her (defendant) to keep it from the plaintiff's creditors. The plaintiff testified that the defendant told her that she would hold the property in trust for her (plaintiff) and she would give it back anytime the plaintiff requested. The defendant testified she could not really say why the plaintiff conveyed the subject property to her, but she believes it was to shield the property from her (plaintiff's) brother. The defendant testified that she never agreed to give the property back to the plaintiff upon request.
The plaintiff testified that after thinking about conveying the property to the defendant for a few days, she decided that CT Page 12191-EE she would do it. Thus, she went to Attorney Philip Reed, and had him draw up the necessary deeds. Attorney Reed testified that the plaintiff wanted to put the property in the defendant's name. He stated that the plaintiff told him the defendant was her best friend and that she was doing this to avoid creditors. Attorney Reed stated that the plaintiff signed quit claim deeds conveying her property in the Towns of Prospect and Mansfield to the defendant on May 11 1988, in his office (Exhibits 1 and 2). Attorney Reed also stated that he prepared quit claim deeds which reconveyed the said properties in the Towns of Prospect and Mansfield back to the plaintiff from the defendant. He gave these deeds to the plaintiff. Attorney Reed testified that the defendant was never in his office. Attorney Reed testified that he understood the purpose of the quit claim deeds conveying the properties back to the plaintiff was to allow conveyance back to her in the event of the defendant's death or if the problem with Father Nadolny was solved. Attorney Reed stated he never met the defendant until he saw her in court during this trial, and that he does not know if she ever signed the deeds quit claiming the subject properties back to the plaintiff. The plaintiff testified that the defendant signed said deeds quit claiming the CT Page 12191-FF property back to her in 1988 at the defendant's bank. Lenore Corrone, who has worked for Shawmut Bank and its predecessors for twenty-one years, was called as a witness by the plaintiff. The plaintiff informed the court that she thought Mrs. Corrone had signed as a witness on the deed reconveying the subject properties back to her. However, Mrs. Corrone does not remember witnessing any such deed. Mrs. Corrone testified that the defendant was a customer of hers for many years. She also stated that she had heard the defendant mention the plaintiff's name in the last year. Mrs. Corrone also knew that the plaintiff had lived in the defendant's home in the past.
The plaintiff testified that she sold a building lot which was taken from one of the pieces of property in Prospect in 1992. At this time, the defendant was the record owner of the property. However, the plaintiff testified she did everything relative to the sale of such property. The plaintiff testified that the defendant signed the deed conveying said property to the purchaser. The purchaser made the check for said purchase price out in the defendant's name. The defendant endorsed that check over to the plaintiff and the plaintiff retained said CT Page 12191-GG monies.
The plaintiff claims she did twenty-four things relative to the properties that showed she owned them, even though they were in the defendant's name. She did things such as renting the property, collecting rents, paying insurance for the properties, paying taxes, purchasing fuel therefor and seeing that the septic system was cleaned, etc.
The plaintiff testified that in 1989, the defendant went to Florida for two weeks to care for her mother and stayed approximately four years until 1993. During that time, the plaintiff claims she did not live in the defendant's home, except for one month. Other witnesses testified she did, in fact, live there during most of this time. However, the plaintiff does admit that she stored her personal items in the defendant's home during this period. (See Exhibits 14A and 14B) The plaintiff said she lived at 140 Center Road, Woodbridge, Connecticut, during this time, where she cared for a sick person. She testified that she drove by the defendant's home and checked it, and sometimes went in to see that everything was CT Page 12191-HH in order. The plaintiff stated that she visited the defendant in Florida between December 16, 1992 and March 23, 1993. Upon her return to Connecticut, she went to the defendant's home and found that it had been burglarized. The plaintiff testified she left the quit claim deeds which the defendant signed reconveying the subject properties back to her in the defendant's house and that when she returned from Florida, they were missing. That was the only item of the plaintiff's that was missing.
The defendant, Ann Teti, testified that she met the plaintiff in 1987, and they became friends. She testified that in 1988, the plaintiff conveyed her property in Prospect and Mansfield to her because she (plaintiff) did not want to share it with her brother. The defendant testified she gave the plaintiff $60,000.00, and that the plaintiff signed a promissory note to her for that amount. This note was never shown to the court. The defendant denied that she ever made an agreement with the plaintiff to reconvey back to her (plaintiff) the subject land. The defendant testified that the plaintiff lived in her (defendant's) house for five years while she was in Florida and she trashed said house. She testified the plaintiff CT Page 12191-II never paid her any money or rent or utilities during this time. The defendant did state on cross examination by the plaintiff's attorney that it would not be fair for her to get all of the property if it was worth more than $60,000.00. The plaintiff retrieved her personal items from the defendant's home on June 5, 1993.
Both parties had real estate appraisers testify concerning the value of the Prospect properties in 1988. The plaintiff's appraiser was Jack Assuncia, and he testified that as of October 14, 1994, the Prospect properties had a fair market value of $535,000.00 (Exhibit C). He testified that in 1988, the fair market value of the Prospect properties would have been about $640,000.00.
The defendant's appraiser was Steven Baldino, and he testified that in his opinion, the fair market value of the Prospect properties as of July 1, 1987 was $305,000.00 (Exhibits 15, 16 and 17). When Mr. Baldino was asked what the fair market values of the properties were today, he stated that he did not have an opinion. He is seeking a fee for his testimony and his CT Page 12191-JJ appraisals of $1,350.00.
The parties stipulated that the Grand List assessment as of October 1, 1992 was $201,360.00 for 47 Spring road, Prospect, $39,310.00 for 48 Spring Road, Prospect, and $44,310.00 for 133 Salem Road, Prospect, for a total assessment of $284,980.00.
According to the certified copy of the 1990 Mansfield Assessor's Office card relative to the subject property in that town, the assessed value of the property is $113,540.00, with a fair market value of $162,200.00 (Exhibit D).
The parties stipulated that the plaintiff owes the defendant approximately $60,000.00. The plaintiff agrees she owes the defendant $18,000.00 for money the defendant lent her to pay her divorce attorney, $18,004.63 for taxes the defendant paid to the town of Prospect, and $24,000.00 the defendant lent her to pay Father Nadolny. These sums total $60,004.63. The defendant claims that the plaintiff owes her $24,000.00 for the sums paid to Father Nadolny, $18,004.63 paid for the Prospect taxes, $16,419.98 paid for the Town of Mansfield taxes, and CT Page 12191-KK $500.00 that it cost her to clean up her home after the plaintiff lived in it. These sums total $58,924.61.
The properties involved in this matter are those described in Trial Exhibits 18 and 19. It should be noted here that the lot which was sold in 1992 for $49,000.00, as aforementioned, is deleted from the description in Trial Exhibit 18. Thus, it was agreed by both counsel and the parties that the properties subject to this memorandum are described in Trial Exhibits 18 and 19, which are Exhibits A and B attached hereto.
The plaintiff is seeking an order conveying title to the subject properties to her and entitling her to immediate and exclusive use, enjoyment and possession of said properties. She also seeks money damages and such other relief as the court deems fair and just.
The plaintiff's complaint is in four counts and alleges, as stated hereinbefore, a breach of contract, creation of a constructive trust, unjust enrichment of the defendant and seeks to quiet title to the subject properties. CT Page 12191-LL
Before a trial court finds that a constructive trust exists and should be imposed, the court must find that a confidential relationship existed between the transferor and transferee at the time of the transfer of the property. Gulack v. Gulack,30 Conn. App. 305, 312. To conclude that a constructive trust exists, the trial court must find, in addition to the existence of a confidential relationship, that unjust enrichment of the party holding title would occur if the trust were not imposed.Ibid., 313. After hearing the evidence, this court finds that at the time of the execution of the deeds quit claiming the subject properties to the defendant by the plaintiff, there was a confidential relationship then existing between the parties.
The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. Banthinv. Shoreline Plumbing Heating Supply Corporation, 30 Conn. App. 637,639. A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Brown v. Brown,190 Conn. 345, 349. CT Page 12191-MM
Here, the defendant testified that it would not be fair for her to get all of the subject properties if they were worth more than $60,000.00. This court finds that they are worth substantially more than $60,000.00, irrespective of which appraisal the court finds most valid. There was no evidence which stated with any specificity what liens were on any of the properties. However, the evidence does show that whatever liens are on said properties do not come close to equalling the value of the properties.
The right of recovery for unjust enrichment is equitable, its basis being that in a given situation, it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.Palverari v. Pratt, 29 Conn. App. 191, 200. Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted [benefited], (2) that the defendants unjustly did not pay the plaintiff for the benefits, and (3) that the failure of payment was to the plaintiffs detriment. Ibid., 201. CT Page 12191-NN
The defendant asked the court to invoke the "clean hands doctrine." That doctrine holds that one who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. Ibid., 202. The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the court's integrity dictate that the clean hands doctrine be invoked. Ibid. Here, the court does not choose to invoke the "clean hands doctrine." To do so would work an injustice while the purpose of that doctrine is to avoid such a result. To allow the defendant to keep all of the subject properties under the facts of this case would be unconscionable.
After hearing the evidence, the court finds that the plaintiff has sustained her burden of proof on the second and third counts of her complaint. The court also finds that the plaintiff owes the defendant the sum of $60,004.63 as set forth hereinbefore, and that the defendant has an equitable lien on all of the subject properties for that amount. Therefore, the court orders the defendant to quit claim the subject properties CT Page 12191-OO which were conveyed to her by the plaintiff on May 11, 1988, and which are located in the Towns of Prospect and Mansfield, in the State of Connecticut, back to the plaintiff within thirty (30) days of the date of this memorandum, subject to the equitable lien which the court previously discussed. The defendant shall have the right to foreclose on said equitable lien of $60,000.63 if she should so choose. If the defendant does not convey said properties by quit claim deed as ordered hereinbefore, then title shall pass to the plaintiff by operation of law consistent with this memorandum.
Judgment may enter accordingly.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN
EXHIBIT A
YOUR CLIENT: #27285
 TITLE SEARCH ISSUED BY: RICCIO ASSOCIATES, INC.
CT Page 12191-PP
TO: Betar, Quatrella Hendrie, ONLY NOT ASSIGNABLE
 THIS IS TO REPORT, that after a review of the Land Records,as indexed, of the Town of Prospect, County of New Haven,and State of Connecticut, to the date and time hereof, I am of theopinion that Ann B. Teti
of the ____________, of __________________, County of____________
and State of Connecticut, is (are) the owner (s), in fee simple absolute of all that (those) certain piece (s) or parcel (s) of land, together with any buildings and improvements thereon standing, situated in the Town and County first hereinabove mentioned, and more particularly bounded and described in the Schedule hereto attached, designated as Schedule "A", and incorporated herein by reference, and this is to further report that said premises are subject only to the following encumbrances:
1. Any and all provisions of any municipal regulation or ordinance, and any CT Page 12191-QQ Federal, state or local public or private laws, with special reference to the provisions of any zoning rules and regulations governing the subject premises.
2. Such facts as an accurate survey and/or physical inspection of said premises might reveal.
3. Any assessments or pending assessments for which a lien or liens have not as yet been filed or recorded in the Town Clerk's Office.
4. I assume no liability for compliance with the requirements of any consumer protection, environmental protection, truth-in-lending, settlement procedures act, or similar law.
5. Subject to the provisions, if applicable, of any inland/wetlands or coastal wetlands or historical district statutes, ordinances, rules and regulations.
6. REAL ESTATE TAXES: SPECIAL ASSESSMENT (i.e. Sewer Use, Water Use, Fire District etc.) FOR INFORMATIONAL PURPOSE ONLY:
My office does not have direct access to Tax Collector's records and CT Page 12191-RR therefore must rely entirely upon information supplied to us by the staffs in those offices. Many towns do not maintain their records properly. Taxes and special assessments must be confirmed before closing. No liability will be assumed by my office on any deliquencies [delinquencies] for which there is not a corresponding lien properly filed and indexed in a timely manner on file in the Town Clerk's Office.
 Taxes on the List of October 1, 1992 as follows:
 47 Spring Road Map 102; Lot 47; List #02967; Assessment: $201,360; Total Tax: $3,976.86 — Nothing Paid. Due plus interest;
 Said premises are subject to the following tax liens:
YEAR: VOLUME: PAGE: AMOUNT:
1991 223 350 3,976.86 CT Page 12191-SS 1990 200 314 4,027.20 1989 184 148 2,944.40 1988 171 175 2,694.88
All due plus interest and lien fees.
 48 Spring Road Map 102; Lot 48; List #02968; Assessment: $39,310; Total Tax: $776.38 — Nothing Paid. Due plus interest;
 Said premises are subject to the following tax liens:
YEAR: VOLUME: PAGE: AMOUNT:
 1991 223 351 776.38 1990 200 315 786.20 1989 184 149 470.24 1988 171 176 430.38 CT Page 12191-TT
All due plus interest and lien fees.
 33 Salem Road Map 105; Lot 33; List #02969; Assessment: $44,310; Total Tax: $795.54 — Nothing Paid. Due plus interest.
1991 Taxes are reported to be paid in full.
 Under C.G.S. 12-53A an additional assessment will be levied on these premises within 90 days of the granting of the Certificate of Occupancy and a bill will be sent out for the additional assessment which will relate back to the day that the Certificate of Occupancy was granted.
 TAX COLLECTOR REPORTS NO OTHER SPECIAL ASSESSMENTS
TAX NOTE: We accept no tax liability CT Page 12191-UU
 TAX NOTE: We accept no liability for past due taxes for which municipalities have accepted tax payments and not properly applied them as required by Connecticut General Statute 12-144b.
7. A mortgage from Eleanor Landry to Naugatuck Savings Bank in the original principal amount of $7,000 dated February 14, 1986 recorded February 21, 1986 at Volume 97 Page 263.
8. Notice of Approval as set forth in Volume 218 Page 266.
9. SURVEY NOTE: We recommend a survey be made of the First Piece in order to more accurately describe said premises.
10. NOTE: Planning and Zoning We obtained a copy of the Notice per your request. CT Page 12191-VV
11. Street Abandonment — Map Recorded in Volume 11 Page 21 indicates an abandonment of "Old Logtown Road". We are confirming this. Since adjoining owners take to the centerline, there may be additional parcel. We will confirm.
12. NOTE: Deed recorded in Volume 9 Page 87 to the Union School District dated July 11, 1919 does not seem to appear on Assessor's Map. Survey should place this parcel.
CERTIFIED TO AUGUST 26, 1993 AT 8:00 A.M.
 RICCIO ASSOCIATES, INC. _______________________ THOMAS L. RICCIO President
NOTE: We have run the daybook from August 26, 1993 to September 9, 1993. Please double check before recording. WE ASSUME NO CT Page 12191-WW LIABILITY FOR INSTRUMENTS CONTAINED THEREIN.
NOTE: This parcel was originally indicated to be in two towns Prospect Naugatuck. Our search showed it only lies in Prospect.
SCHEDULE A
Those three certain pieces or parcels of land with all the buildings, thereon, situated in the Town of Prospect, County of New Haven and State of Connecticut, and more particularly bounded and described as follows:
FIRST PIECE: with buildings thereon and containing twenty-four (24) acres more or less and bounded:
NORTHERLY: on land now or formerly of Mary Brewster;
EASTERLY: on land now or formerly of Fred Vogeli;
SOUTHERLY: on Highway from Prospect to Naugatuck; and CT Page 12191-XX
WESTERLY: on Highway
SECOND PIECE: on the opposite side of Highway with buildings thereon bounded:
NORTHERLY: on land now or formerly of Almon P. Scovill;
EASTERLY: on Highway;
SOUTHERLY: on land now or formerly of Robert Foster;
WESTERLY: on land now or formerly of Olaf Swanson; and
THIRD PIECE: a triangular piece and bounded:
EASTERLY: on land now or formerly of one Vogeli;
SOUTHERLY: by abandoned Highway; CT Page 12191-YY
WESTERLY: to a point; and
NORTHERLY: on said Highway leading from Prospect to Naugatuck.
Excepting therefrom those two certain pieces or parcels of land situated in the Town of Prospect, County of New Haven and State of Connecticut, and shown more particularly on a map showing a portion of property of Albert Epawasaris, a.k.a. Albert Spring, and Alex Epawasaris a.k.a. Alex Spring, located on Spring Road, Prospect, Connecticut, to be conveyed to The Indian Field Company, 101 Harbor Road, Southport, Connecticut, Survey Map by Edward A. Nielson, Sr., 54 Palisade Avenue, Bridgeport, Connecticut, Registered Land Surveyor, #6404, Scale; 1" = 40' — April 24, 1971, to be filed in the Prospect Town Clerk's Office. Said parcels are bounded as follows:
PARCEL #1
EASTERLY: by Spring Road, as shown on said map, 485.20 feet; CT Page 12191-ZZ
SOUTHERLY: by land now or formerly of Mildred Kelly, as shown on said map, 64.41 feet;
WESTERLY: by land now or formerly of Mildred Kelly, as shown on said map, 398.92 feet; and
NORTHWESTERLY: by land now or formerly of Mildred Kelly, as shown on said map, 144.41 feet;
WESTERLY: by Spring Road, as shown on said map, 602.46 feet;
NORTHERLY: by land now or formerly of Domenick Massimo et al, as shown on said map, 682.92 feet;
NORTHEASTERLY: by land now or formerly of Domenick Massimo et al, as shown on said map, 178.80 feet;
SOUTHERLY: by other land of the Grantors herein, as CT Page 12191-AAA shown on said map, 101.65 feet;
EASTERLY: by other land of the Grantors herein, as shown on said map, 247.75 feet;
SOUTHEASTERLY: by other land of the Grantors herein, as shown on said map, 203.52 feet; and
SOUTHERLY: by other land of the Grantors herein, as shown on said map, 473.33 feet.
Together with an easement of 20 feet in width running from the southerly bound of the described premises to reach and service a pump on the above premises, as is shown on said map, said pump and appurtenances belonging to the Grantors as set forth in Volume 50 at Page 6.
Being the same premises conveyed to Albert Pawascis, Simon Pawascis and Alex Pawascis by George Spink by deed dated January 17, 1912 and recorded in the Prospect Land Records in Volume 8, Page 289. See Also Certificate of Deceased's CT Page 12191-BBB Ownership of Real Estate wherein Simon J. Spring a.k.a. Simon Pawasaris died on May 28, 1970, dated April 8, 1971 and recorded April 13, 1971, in the Prospect Land Records, Volume 49, Page 219. See also deed from Walter A. DeAndrade, committee appointed by the Court of Probate for the District of Cheshire, for Estate of Simon J. Spring, a.k.a. Simon Pawasaris, conveying decedent's undivided one-third interest to Alexander J. Spring and Albert G. Spring dated May 27, 1971, and recorded May 28, 1971, in Volume 49, Page 398 of the Prospect Land Records. See also deeds in Volume 66 at Page 706, Volume 90 at Page 80 and Volume 141 at Page 13.
Also excepting a certain piece of land described in Warranty Deed from Albert, Simon and Alex Pawascis to the Union School District in deed dated July 11, 1919 and recorded in Volume 9, Page 87 of the Prospect Land Records.
Also excepting from the above third piece a certain piece of land described in warranty deed from Ann B. Teti to William M. and Frances M. Lanese in deed dated September 26, 1992 and recorded in Volume 210 at Page 178 of the Prospect Land Records. CT Page 12191-CCC
Exhibit B
YOUR CLIENT: #27274
 TITLE SEARCH ISSUED BY: RICCIO ASSOCIATES, INC.
TO: Betar, Quatrella Hendrie, ONLY NOT ASSIGNABLE
 THIS IS TO REPORT, that after a review of the Land Records,as indexed, of the Town of Mansfield, County of Tolland, andState of Connecticut, to the date and time hereof, I am of theopinion that Ann B. Teti
of the __________________ of _________________, County of ____________
and State of Connecticut, is (are) the owner (s), in fee simple absolute of all that (those) certain piece (s) or parcel (s) of land, together with any buildings and improvements thereon standing, situated in the Town and County first hereinabove CT Page 12191-DDD mentioned, and more particularly bounded and described in the Schedule hereto attached, designated as Schedule "A", and incorporated herein by reference, and this is to further report that said premises are subject only to the following encumbrances:
1. Any and all provisions of any municipal regulation or ordinance, and any Federal, state or local public or private laws, with special reference to the provisions of any zoning rules and regulations governing the subject premises.
2. Such facts as an accurate survey and/or physical inspection of said premises might reveal.
3. Any assessments or pending assessments for which a lien or liens have not as yet been filed or recorded in the Town Clerk's Office.
4. I assume no liability for compliance with the requirements of any consumer protection, environmental protection, truth-in-lending, settlement procedures act, or similar law.
5. Subject to the provisions, if applicable, of any inland/wetlands or CT Page 12191-EEE coastal wetlands or historical district statutes, ordinances, rules and regulations.
6. REAL ESTATE TAXES: SPECIAL ASSESSMENT (i.e. Sewer Use, Water Use, Fire District etc.) FOR INFORMATIONAL PURPOSE ONLY:
My office does not have direct access to Tax Collector's records and therefore must rely entirely upon information supplied to us by the staffs in those offices. Many towns do not maintain their records properly. Taxes and special assessments must be confirmed before closing. No liability will be assumed by my office on any deliquencies [delinquencies] for which there is not a corresponding lien properly filed and indexed in a timely manner on file in the Town Clerk's Office.
 Taxes on the List of October 1, 1992. List #4161; Assessment: $113,540; Total Tax: $2,902.08 — Nothing Paid. Due plus interest;
 Said premises are subject to the following tax liens:
 YEAR: VOLUME: PAGE: AMOUNT:
CT Page 12191-FFF
 1987 285 335 2,828.91[*] 1989 307 88 3,314.71 1990 319 259 2,902.08 1991 333 233 2,902.08
All due plus interest and lien fees.
[*] NOTE: Tax Collector reports that this has been paid in full. However, it is not released on the Land Records. Please confirm.
 TAX COLLECTOR REPORTS NO OTHER SPECIAL ASSESSMENTS
TAX NOTE: We accept no tax liability
 TAX NOTE: We accept no liability for past due taxes for which municipalities have accepted tax payments and not properly applied them as required by Connecticut General Statute 12-144b. CT Page 12191-GGG
7. A mortgage from Raymond J. Landry and Eleanor S. Landry to Willimantic Savings Institute in the original principal amount of $23,000 dated January 31, 1969 recorded January 31, 1969 at Volume 108 Page 549.
8. Attachment as set forth in Volume 154 Page 56.
9. Judgment Lien as set forth in Volume 156 Page 159.
10. Judgment Lien as set forth in Volume 216 Page 275.
11. Judgment Lien as set forth in Volume 221 Page 277.
12. Lis Pendens as set forth in Volume 223 Page 68.
13. Subject to conditions as set forth in a deed CT Page 12191-HHH from Stanley L. Storrs to A. Harry Dreesen dated March 14, 1953 recorded in Volume 76 Page 56 of the Mansfield Land Records.
14. NOTE: I find two unreleased Lis Pendens — Volume 143 Page 66 and Volume 143 Page 69. In my opinion, these actions have been merged by virtue of Judgment recorded in Volume 185 Page 79 of the Mansfield Land Records.
CERTIFIED TO AUGUST 13, 1993 AT 8:00 A.M.
 RICCIO ASSOCIATES, INC. ____________________________ THOMAS L. RICCIO President
NOTE: We have run the daybook from August 13, 1993 to September 9, 1993. Please double check before recording. WE ASSUME NO LIABILITY FOR INSTRUMENTS CONTAINED THEREIN.
SCHEDULE A CT Page 12191-III
A certain piece or parcel of land, with buildings and all other improvements thereon, situated in the Town of Mansfield County of Tolland and State of Connecticut, bounded and described as follows:
Beginning at a point on the easterly side of State Highway Route 195 near the foot of Spring Hill, in said Town of Mansfield, which point is 15' 6" southerly from a C.H.D. marker and at land now or formerly of one Faeth; thence Easterly by land of said Faeth a distance of 175 feet, more or less, and continuing in a straight line by land now or formerly of S. Storrs a distance of 75 feet to a pin; thence the line turns and runs Southerly by land now or formerly of said Storrs a distance of 145 feet, more or less, to a pin; thence the line turns and runs Westerly by land now or formerly of said Storrs a distance of 250 feet, more or less to a pin in the easterly line of the above named State Highway; thence the line turns and runs Northerly by the easterly line of said highway a distance of 145 feet, more or less, to the point of beginning. CT Page 12191-JJJ
Said premises are also known as #806 Storrs Road.