[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
From April 1994 until August 29, 1997, the plaintiff, Mr. Santangelo, worked in a soda bottling business operated by the corporate defendant (Elite), which was wholly owned by its president, Roland Stefandl, the individual defendant. This lawsuit arises out of that employment relationship. Mr. Santangelo, who had extensive prior experience, was recruited by Mr. Stefandl in 1993 to establish a new bottling business and acted as its plant manager once it was up and running. At all CT Page 2645-f times Mr. Santangelo was paid by one or another of Mr. Stefandl's corporate entities, and from April 1994 until he was fired in August 1997, his employer was Elite[1].
This case was tried to the court on three days in August and September 1999. Both the plaintiff and the defendant testified at length, and the plaintiff's sister, Joanne Santangelo, testified as a witness for the plaintiff.[2] I had ample opportunity to assess the credibility of the parties. This memorandum represents my findings of fact and conclusions of law, based on the testimony I heard, my evaluation of the credibility of the parties and the other witness and my examination of the exhibits introduced into evidence.
In his complaint the plaintiff alleges various causes of action against one or the other of the defendants.[3]
Counts One and Two
These counts allege a violation of General Statutes § 31-76k, count one as to Mr. Stefandl; count two as to Elite. The statute provides:
 If an employer policy . . . provides for the payment of accrued fringe benefits upon termination, . . . and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits . . . in accordance with such . . . policy. . . .
Mr. Santangelo claims that he was entitled to two weeks of vacation leave each year and six sick days, that, if unused, these accruals could be carried over to succeeding years, and that he was not paid for accruals for 1995, 1996 and 1997 when he was fired in 1997. The problem with the plaintiff's claim is that he failed to prove that there was any "employer policy" establishing his accruals of vacation and sick leave other than the one evidenced by Exhibit 1, which provides for three paid sick days per year and five paid vacation days per year, with no provision for carryover of unused leave to subsequent years.[4]
Thus, the most he would be entitled to would be his accruals for 1997 less whatever he used in that year.
Since the plaintiff was being compensated at the rate of $1350 weekly in 1997, his daily rate was $270. He acknowledged taking CT Page 2645-g one leave day that year; therefore, the most he would have been entitled to would be seven days at $270 or $1890. But the plaintiff also admitted that he was paid twice for the last week he worked for Elite. See also Exhibits 28 and 30.
Accordingly, I find that the plaintiff was entitled to payment for two unused leave days in 1997 or $540.[5]
Count one alleges a violation of § 31-76k by the individual defendant, Mr. Stefandl. It is clear from the evidence that the plaintiff's employer at the time he was fired was Elite. The plaintiff argues that the corporate veil between Elite and Mr. Stefandl should be pierced, but I find that he has failed to establish the elements of the "instrumentality" test set up byZaist v. Olson, 154 Conn. 563, 575 (1967), to guide courts in deciding when to pierce such veils. Clearly, Mr. Stefandl had control over Elite as its president and sole shareholder. Mr. Santangelo has failed to prove, however, that he used that control to "commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights." Id., 576.
Therefore, judgment shall enter for the individual defendant, Mr. Stefandl, on count one. Judgment shall enter for the plaintiff, Mr. Santangelo, on count two against Elite in the amount of $540.
Count Three
Count three fails for reasons analogous to those which sank count one. It alleges a breach of contact by Mr. Stefandl in that funds advanced by Mr. Santangelo to Elite were not repaid by Mr. Stefandl. There was no evidence, however, of any agreement by Mr. Stefandl that he would personally repay Mr. Santangelo. Indeed, he didn't request these funds from Mr. Santangelo and didn't know that Mr. Santangelo had transferred them to Elite for about a year after the transfers were made.
Since Mr. Stefandl had no personal involvement in this transaction, and since there are no valid reasons to pierce the corporate veil of Elite, judgment will enter on count three for the defendant, Mr. Stefandl.
Count Four
CT Page 2646
Count four is another matter and constitutes the heart of Mr. Santangelo's case. It is a claim of unjust enrichment against Elite for its failure to repay Mr. Santangelo $35,000 of his personal funds which he deposited to Elite's corporate account at a time when the corporation was in difficult financial straits.[6]
Mr. Santangelo bears the burden of proving all of the elements of his claim, including that the money was not repaid by Elite. He has met that burden. Indeed, it is undisputed that the funds were transferred from his personal funds to Elite's checking account, and it is undisputed that they were never repaid in the usually understood sense of that word, except for the $5,000 Mr. Santangelo repaid himself from the Elite account in April 1996.[7]
My examination of Exhibits E and F convinces me that the funds were used for the benefit of Elite at a time when its coffers were bare of other funds.
Elite claims, however, that Mr. Santangelo was "repaid" and then some for these advances via checks he wrote to himself and to petty cash over the years he worked for Elite (1994-1997). Such checks totaled over $80,000, and Elite argues that I should infer from Mr. Santangelo's inability to explain the purpose of each of the checks written that they were in reality for his personal benefit and not for the benefit of Elite. This is not an inference I am willing to make.
First, Mr. Santangelo was able to explain enough of the checks written to himself during the period of his employ[8] as in furtherance of Elite's business purposes to preclude my assuming that the remainder were really payments for his own benefit without any evidence offered by Elite to support that assumption. Second, as to the petty cash checks (totaling about $40,000), he was also able to explain some of the largest of the checks written. Almost all of the remainder were in relatively small amounts, in the hundreds of dollars, and I will not infer from his inability to explain the purpose of them several years after they were written that they were nothing more than concealed payments to himself.[9] Finally, I do not find the amounts of petty cash checks written each year[10] so unreasonable, in a business which had total expenses of over $3,000,000 in 1996 alone,[11] arouse suspicion that the checks were concealed CT Page 2647 payments for Mr. Santangelo's benefit.
Thus, the plaintiff has proven the three elements of unjust enrichment, "(1) that the defendants were benefitted [benefited], (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment". (Internal quotation marks and citation omitted.) Polverari v. Peatt, 29 Conn. App. 191, 201 (1992). As Elite points out, however, unjust enrichment is an equitable remedy, Id., 200, and one seeking its benefits must come to the court with clean hands. Id., 202. Mr. Santangelo's hands are dirtied by a profit of $24,999 he gained at the expense of Elite on the eve of its beginning operations with him in its employ.
At the same time as he was in discussions with Mr. Stefandl about going to work with him in the bottling business, Mr. Santangelo bought for $1.00 bottling equipment, which he then resold to Mr. Stefandl for $25,000[12]. Far from disclosing to Mr. Stefandl that he had purchased the equipment for $1.00, Mr. Santangelo led him to believe that the equipment was being purchased from a third party, and that the required sales price was $25,000. This was the same equipment which Mr. Stefandl had previously asked Mr. Santangelo to make a deal for on behalf of the new bottling company.
As Mr. Santangelo admitted under cross examination, he "made a twenty-four thousand nine hundred and ninety-nine dollar profit off of Mr. Stefandl and the new business back in 1993 and early 1994." Transcript of trial proceedings, August 24, 1999, p. 78, 1.16-18. Equity requires that Mr. Santangelo's recovery from Elite for the funds he advanced to it in 1996 be reduced by the amount of the funds he made at its expense in 1994.
Accordingly, Mr. Santangelo is entitled to payment of $10,001 from Elite, the difference between the unpaid balance of the funds he advanced to it in 1996 ($35,000) and the profit he made at its expense in 1994 ($24,999).
In September 1997 counsel for Mr. Santangelo wrote Mr. Stefandl, putting him formally on notice of Mr. Santangelo's continuing demand for payment of the funds advanced to Elite.[13] Mr. Santangelo had been terminated from Elite's employ the month before, and it was clear that he was not to return. The evidence disclosed no efforts on the part of Mr. Stefandl, in his capacity as President of Elite, to resolve this CT Page 2648 dispute. I conclude that Elite's failure to make any such effort calls for me to exercise my discretion to award prejudgment interest under General Statutes § 37-3a. I conclude that from October 1, 1997 forward Elite illegally detained the funds I have found due to Mr. Santangelo. This was the date by which it had had a reasonable opportunity to examine its books and records, after counsel's demand of September 8, 1997, to determine how much it owed Mr. Santangelo, especially in view of the fact that he had made repeated verbal and written demands for repayment in the months leading up to his termination. I compute that interest to total $2,416.91, at 10 percent per year from that date to the date of this opinion.
Accordingly, judgment shall enter for the plaintiff against the defendant Elite on this count in the amount of $12,417.91.
Count Five
This count claims that certain specified equipment was provided by Mr. Santangelo for the operations of Elite, that Mr. Stefandl had agreed to pay fair market value for that equipment, and that fair market value was $16,500.[14]
No evidence whatever was offered to prove such an agreement. Nor was any credible evidence offered as to the fair market value of the equipment. Although the count alleges that the equipment is still being used in the operations of Elite, this is not a claim against Elite for unjust enrichment but one against Mr. Stefandl personally for breach of contract.
Accordingly, judgment must enter for the defendant on this count.
Count Six
Finally, in a count that seems to be directed to both Elite and Mr. Stefandl, the plaintiff claims that in 1997 the latter agreed to pay for a new truck for Mr. Santangelo's personal use as a bonus for work performed prior to that date, and that neither Mr. Stefandl nor Elite had made good on that promise.
The evidence was that Mr. Santangelo ordered a new truck for himself in 1997 and, in a subsequent, casual conversation with Mr. Stefandl, suggested that it be paid for by Elite or Mr. Stefandl. This suggestion, according to Mr. Santangelo, elicited a jocular response from Mr. Stefandl to the effect that he was CT Page 2649 probably right, and that Mr. Santangelo should finance the entire purchase and pay for the truck out of Elite's funds.[15]
Even accepting Mr. Santangelo's account of this event as true[16], this kind of exchange does not evidence the meeting of the minds that is essential to a contract, and the fact that there was no such agreement is demonstrated by Mr. Santangelo's failure to make any of the payments for the truck out of Elite's account even though he retained virtually complete control over it until he was let go in August 1997. Judgment shall enter on this count for the defendant.
In summary, judgment shall enter for the plaintiff against the defendant Elite on Counts Two and Four in the total amount of $12,957.91. Judgment shall enter for the defendants on all other counts of the complaint.
BY THE COURT
SHORTALL, J.