JAMES B. FRANKS *v*. RALPH J. LOCKWOOD ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued February 4—decided March 31, 1959

274

*Robert R. Rosan,* for the appellants (named defendant et al.).

*John Keogh, Jr.,* with whom was *Walton Clark, Jr.,* for the appellee (plaintiff).

MURPHY, J. The plaintiff purchased four lots in a development in Norwalk from the defendant Lockwood on May 6, 1956. Within two weeks thereafter, the lots were stripped of topsoil and it was placed upon four other nearby lots which either were then owned by Lockwood or had been sold by him under agreements to grade them and cover them with topsoil. The actual stripping had been done by William Nagy, an employee of Nagy Brothers, Inc., excavation contractors. The latter was employed by The Donrich Corporation of Connecticut, to which we shall refer as Donrich, the building contractor for Lockwood in the construction of houses on the four lots to which the topsoil was removed. Donrich had contracted to do the grading and landscaping for Lockwood. The plaintiff brought suit against Lockwood, Donrich, Nagy, and Nagy Brothers, Inc. The latter two were defaulted. In a hearing in damages as to them and in the trial on the merits as to the other two defendants, the jury returned a general verdict of $5500 against all defendants. Only Lockwood and Donrich have appealed.

The complaint is in three counts. The first count, against William Nagy and Nagy Brothers, Inc., alleges the trespass by Nagy as the agent of Nagy Brothers, Inc., in taking the topsoil. This count is incorporated in both the second and the third counts, which are against all the defendants. The second count seeks recovery from Lockwood and Donrich under the doctrine of unjust enrichment, while in the third count it is alleged that Nagy and Nagy Brothers, Inc., acted in accordance with the instructions, and under the direction, of the other two defendants and their agents. Lockwood and Donrich, hereinafter called the defendants, filed a general denial and did not plead specially either in avoidance or otherwise, although upon the trial the fact that Nagy had removed some of the topsoil from the plaintiff's lots and placed it on those Lockwood was obligated to grade was not disputed.

The defendants have assigned as error the refusal of the trial court to set aside the verdict, its charging as it did in twenty-four paragraphs of the charge, its failure to include in the finding forty-seven paragraphs of the draft finding, and its refusal to charge in accordance with the defendants' request to charge. In effect, the defendants by the wholesale manner in which they allege error and by the arguments advanced in their brief seek to have this court retry the issues. That is not our function. *Trenchard* v. *Trenchard,* 141 Conn. 627, 631, 109 A.2d 250. The wholesale attack on the finding tends to cloud the real issue and cast doubt on the merits of the defendants' claims. *Anderson* v. *C. E. Hall & Sons, Inc.,* 131 Conn. 232, 236, 38 A.2d 787. In a jury case it is rarely justified. *Reboni* v. *Case Bros., Inc.,* 137 Conn. 501, 506, 78 A.2d 887. Furthermore, the forty-seven paragraphs of the draft finding

which the defendants seek to have added to the finding concern the claims of proof of the plaintiff rather than those of the defendants. A litigant may not force into the claims of proof of his adversary factual matters which are objectionable to the latter and upon which he does not rely. *Castaldo* v. *D'Eramo,* 140 Conn. 88, 93, 98 A.2d 664. The defendants also filed a motion in the trial court to correct the finding, and they attempt to assign as error the denial of that motion. Since the adoption of the present practice, a motion to correct the finding has not been required. Maltbie, Conn. App. Proc., § 172. Where corrections in the finding are sought, the first step is to include in the assignment of errors paragraphs stating the corrections desired. Then after transcripts of the relevant evidence have been filed, the trial judge will make such corrections as he deems justified or note his refusal to do so. Id. § 154. The defendants are not entitled to any changes in the finding.

From the evidence presented at the trial, the jury could have found the following facts in addition to those stated in the forepart of this opinion. In 1953, Lockwood acquired a tract of land in Norwalk upon which a street called Columbine Lane was constructed. The property was subdivided into building lots and a map of the subdivision was filed in the land records. The plaintiff purchased fourteen of these lots from Lockwood on May 6, 1956, for $56,000. Prior to May, 1956, Lockwood had contracted with four persons—Clark, Marone, Kalner and French—for the construction of houses on lots which were to be conveyed to them when the houses were completed. On May 15, 1956, these houses were substantially completed and all but Marone's had been deeded. In each of the contracts, Lockwood

was obligated to grade the property and cover it with topsoil. The actual construction of the houses was done by Donrich under a verbal contract with Lockwood. Donrich was organized in 1955 by Lockwood and William H. Perlman. Lockwood owned 50 per cent of the stock of the corporation. The other half was owned by Perlman and his wife. The three were the officers and directors of Donrich. Under the oral agreement, the corporation was to do the grading and landscaping of the four properties. James Roberts was the construction superintendent for the corporation on these jobs. He engaged Nagy Brothers, Inc., to do excavating, bring in fill, and grade the properties. On or about May 14, 1956, when the topsoil which had been accumulated nearby was exhausted, Roberts directed William Nagy to take topsoil from four of the plaintiff's lots and to spread it about the four properties in question. This was done between May 18 and 21. Roberts claimed that he did not know that Lockwood had sold the lots to the plaintiff. Nagy estimated that he removed between 250 and 300 cubic yards of topsoil from the plaintiff's lots and that it would cost between $500 and $600 to restore them to the condition they were in before he did so. Witnesses for the plaintiff estimated the quantity as being between 1500 and 1800 cubic yards worth $4.50 per yard delivered. The cost of spreading and restoration was estimated at $1000. There was also evidence that the value of each of the four lots from which the topsoil was taken was depreciated by $1500.

From the facts, the jury could have concluded that Nagy committed a trespass to the plaintiff's property when he excavated and removed the topsoil; *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.*, 137 Conn. 562, 570, 79 A.2d 591;

52 Am. Jur. 836, § 2; and that the use of the topsoil in grading the four lots in question was a direct benefit to both Donrich and Lockwood, since otherwise they would have been obliged to provide an equivalent amount of topsoil in order to complete their respective contracts. It is necessary therefore to determine whether the doctrine of unjust enrichment applies to this situation. This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. The obligation to do justice rests upon all persons, natural or artificial. 46 Am. Jur. 99. A right of recovery under the doctrine is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A. 162. It is not necessary, in order to create an obligation to make restitution or to compensate, that the party unjustly enriched should have been guilty of any tortious or fraudulent act. The question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled? *Hixon* v. *Allphin,* 76 Idaho 327, 333, 281 P.2d 1042. That Donrich and Lockwood were enriched is obvious. Under the facts proved, the enrichment was unjust.

On the measure of damages for the plaintiff under the second count, the court, in effect, charged that they were to be determined by the reasonable value of the benefit involuntarily conferred by the plaintiff in the form of his topsoil upon the four properties. Restatement, Restitution § 155, comment c; *Hughes* v. *Oberholtzer,* 162 Ohio St. 330, 335,

123 N.E.2d 393; *Hill* v. *Waxberg*, 237 F.2d 936, 939. Since the amount of the verdict, $5500, is less than the amount claimed by the plaintiff for the topsoil, it is fair to assume that the jury made allowance for the labor and use of equipment not furnished by the plaintiff in the removal and carting of the topsoil. The facts amply support the verdict against the defendants on the second count. The law is solicitous to prevent one man from enriching himself at the expense of another. *Morin* v. *Bond*, 96 Conn. 642, 644, 115 A. 218. We need not determine whether the facts in this case bring it within the third count, which alleges agency. The general verdict must stand since it can be supported under the second count. *Mercier* v. *Naugatuck Fuel Co.*, 139 Conn. 521, 525, 95 A.2d 263, and cases cited. The court did not err in refusing to set aside the verdict.

But one other assignment of error needs discussion. It relates to the failure to charge on independent contractors as requested and to the claim that the charge was inadequate. A charge is to be tested by the claims of proof advanced by the parties and not by the evidence. *Lopes* v. *Connecticut Light & Power Co.*, 145 Conn. 313, 315, 142 A.2d 135. The defendants did not plead by way of confession and avoidance that either Nagy Brothers or Donrich was an independent contractor. Practice Book § 102. Furthermore, neither the draft finding nor the finding indicates any claim of proof that Nagy Brothers was an independent contractor as to the defendants or that Donrich was an independent contractor as to Lockwood. We therefore do not consider this assignment. The charge as given included a correct statement of the principles of law involved, was adapted to the issues and was sufficient as a guide to the jury in the determination of those issues upon

the evidence. Ibid.; *Quackenbush* v. *Vallario,* 114 Conn. 652, 656, 159 A. 893.

There is no error.

In this opinion the other judges concurred.