[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Blue Cross, Blue Shield of Connecticut, Inc. ["BCBS"] filed this action on April 14, 1992 against the defendant, Advanced Medical Systems ["AMS"]. The plaintiff seeks to recover unpaid premiums for three months of group medical insurance coverage.
The complaint contains two counts. In the first count, BCBS alleges that AMS breached the provisions of its group health insurance policy by failing to pay $34,857.28 in premiums due for the months of January, February, and March, 1989. In the second count, BCBS alleges that AMS was unjustly enriched in that BCBS provided medical insurance benefits and coverage to AMS's members during the same time period and that AMS is obligated to compensate and pay BCBS for the reasonable and fair value of the benefits and coverage.
On June 5, 1992, AMS filed an answer and a special defense. In its special defense, AMS claims that it had obtained replacement coverage and was not liable for the premiums pursuant to 38-379(b)-6 (presently 38a-546-3) of the regulations of the Connecticut Department of Insurance. Further, AMS alleges that BCBS has incurred no liability and paid no benefits subsequent to December 31, 1988 making any recovery an unjust enrichment to BCBS.
This case was presented to the court based on a stipulation of facts dated July 30, 1993 and briefs filed by both sides. The CT Page 9664 stipulated facts are as follows: From June 1, 1986 through December 31, 1988, BCBS provided group medical insurance coverage AMS under a master group health insurance policy. (Stipulated facts 1, 2.) BCBS canceled AMS's group health insurance policy on March 31, 1989. (Stipulated fact 3.) Pursuant to the policy's general provisions, paragraph D.2, the policy was terminated at BCBS's option. (Stipulated fact 4.) Paragraph D of the policy provided as follows:
D. Termination of the Policy-Grace Period
 1. Either the Policyholder or the Company may cancel this Policy on any Policy anniversary by giving written notice to the other party at least thirty (30) days in advance.
 2. This Policy will be terminated, at the Company's option, for the Policyholder's nonpayment of the premiums when due or for the Policyholder's failure to perform any obligation required by this Policy.
 3. This Policy has a grace period of one calendar month. This means that if a payment is not made on or before the date it is due, it may be paid during the grace period. During the grace period, the Policy will stay force unless prior to the date payment was due the Policyholder gives timely written notice to the Company that the Policy is to be cancelled. In any event the extension of grace period benefits will not apply after the effective date of replacement coverage.
 4. If the Policyholder does not make payment during the grace period, the Policy will be cancelled, at the company's option, on the last day of the grace period. The Policyholder will be liable to the Company for the payment due including those for the grace period.
AMS did not pay BCBS any premiums after December 31, 1988. (Stipulated fact 5.) The total amount claimed by BCBS is CT Page 9665 $34,857.28. (Stipulated fact 6.) AMS never notified BCBS in writing that it was not renewing its policy. (Stipulated fact 7.) AMS obtained replacement insurance coverage from CBIA/AETNA, effective January 1, 1989, but did not notify BCBS. (Stipulated fact 8.) BCBS did not receive any claims nor pay any benefits under its policy after December 31, 1988. (Stipulated fact 9.) During the period that the policy was in effect, payments were due on the first of every month. (Stipulated to in open court.)
In the first count of the complaint, BCBS alleges that AMS breached its contract by failing to pay the insurance premiums for the months of January, 1989 through March, 1989. BCBS terminated AMS's insurance policy on March 31, 1989 upon AMS's alleged breach of the policy and now seeks to recover payment for the three months of unpaid premiums. BCBS claims in its brief that it had a valid binding contract with AMS to provide insurance coverage in exchange for the payment of a monthly premium due on the first of every month and that it provided such coverage until it terminated the policy effective March 31, 1989.
In response, AMS argues in its brief that there was no contract with BCBS after January 1, 1989 as BCBS provided no consideration for the premiums it presently seeks. AMS asserts that since it procured replacement coverage effective January 1, 1989, no grace period benefits applied after that date under the terms of paragraph D.3 of the policy which provided that: "In any event the extension of grace period benefits will not apply after the effective date of replacement coverage." AMS relies on what it claims is the clear and unambiguous language of the policy as well as 38-379(b)-6 (presently 38a-546-3) of the regulations of the Connecticut Department of Insurance[1].
When the language of the policy is clear and unambiguous, the court is bound to apply the natural and ordinary meaning of the words employed. See Schultz v. Hartford Fire Ins. Co., [213 Conn. 696,702, 569 A.2d 1131 (1990)]. A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there. See Fidelity Trust Co. v. BVD Associates, 196 Conn. 270, 282,492 A.2d 180 (1985). "[T]he liability of the insurer is not to be extended beyond the express terms of the contract." Plainville v. Travelers Indemnity Co., [178 Conn. 664], 675 [425 A.2d 131 (1979)]. Therefore, given the natural and ordinary meaning, the CT Page 9666 policy expresses the reasonable expectations of the parties. General Construction Co. v. Aetna Casualty Surety Co., 151 Conn. 684, 686,202 A.2d 146 (1964). Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 591, 573 A.2d 699 (1990). "The general rules of contract construction govern when the terms of an insurance policy are to be construed. When the terms are clear and unambiguous, then the language must be accorded its natural and ordinary meaning. Griswold v. Union Labor Ins. Co., 186 Conn. 507, 512-13, 442 A.2d 920
(1982); Weingarten v. Allstate Ins. Co., 169 Conn. 502, 509-510,363 A.2d 1055 (1975)." Ryiz v. Federal Ins. Co., 5 Conn. App. 179, 182,497 A.2d 1001 (1985).
The terms of paragraph D of the policy are clear and unambiguous. While paragraph D.3 provides for a grace period of one calendar month during which BCBS will keep the policy in force, even in the absence of a premium payment, as long as the policyholder does not provide "timely written notice" of cancellation, the same paragraph, in its last sentence, explicitly and clearly states that: "In any event the extension of grace period benefits will not apply after the effective date of replacement coverage."
It is undisputed that AMS obtained replacement insurance coverage from CBIA/AETNA effective January 1, 1989. Consequently, by the very terms of its policy, BCBS's extension of grace period benefits to AMS did not apply after January 1, 1989, notwithstanding AMS's failure to notify BCBS in writing that it wished the policy to be canceled. Furthermore, AMS was entitled to rely on the clear language of the last sentence of paragraph D.2 to support a reasonable expectation that since it had obtained replacement coverage BCBS would not be extending any grace period benefits for which it would be liable for premiums under paragraph D.4.
Additionally, this court must construe the terms of BCBS's policy to be consistent with and in conformance with existing statutes and regulations. See Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303, 307, 572 A.2d 307 (1990); Safeco Ins. Co. v. Vetre, 174 Conn. 329, 333, 387 A.2d 539 (1978). As AMS correctly points out, under the provisions of 38-379(b)-6 (presently 38a-546-3) of the regulations of the Connecticut Department of Insurance, BCBS only remained liable under the policy "to the extent of its accrued liabilities and extensions of benefits." CT Page 9667 It is undisputed that BCBS did not receive any claims nor pay any benefits under the policy after December 31, 1988 nor did any extensions of benefits apply after January 1, 1989.
Accordingly, the court finds that AMS did not breach its contract with BCBS. Judgment is entered for the defendant on the first count.
In the second count of the complaint, BCBS alleges that it provided medical insurance benefits to AMS's member after January 1, 1989 however the parties have stipulated that this was not the case. Further, BCBS alleges that AMS was unjustly enriched in that BCBS provided medical insurance coverage for three months without AMS paying any premiums. BCBS alleges, but it has not been stipulated, that AMS knew that BCBS was still providing group medical coverage and that BCBS reasonably and justifiably expected to be paid. Therefore, according to BCBS, AMS should compensate BCBS for the reasonable and fair value of the coverage. BCBS did not brief its claim of unjust enrichment.
In its brief, AMS argues that it was not unjustly enriched because BCBS made no payments under the policy to AMS and its employees from January 1, 1989, to March 31, 1989. In the alternative, AMS asserts that any recovery for BCBS in this case would itself constitute unjust enrichment since BCBS was under no legal obligation to pay benefits to AMS and its employees under the terms of the policy and Connecticut regulations.
Generally speaking, "[p]roof of a contract enforceable at law precludes the equitable remedy of unjust enrichment [citations omitted] . . . ." Feng v. Dart Hill Realty, Inc.,26 Conn. App. 380, 383, 601 A.2d 547, cert. denied, 223 Conn. 912
(1992). See Polverari v. Peatt, 29 Conn. App. 191, 199,614 A.2d 484 (1992). In this case, the agreement between the parties for the payment of premiums in exchange for insurance benefits was based on an express contract which the court has already found has not been breached. Moreover, even if the doctrine of unjust enrichment does apply, its requirements have not been met.
 The doctrine of unjust enrichment has been described as a doctrine "which is so broad as to include almost any case in which unfair dealing appears and so vague as to give no help in solving cases as they arise." 3 Page, Contracts (2d Ed.) 1503, p. 2567; see CT Page 9668 Fischer v. Kennedy, 106 Conn. 484, 498
(dis.), 138 A. 503. It applies "wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." 5 Williston, Contracts, (Rev. Ed.) 1479. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. Franks v. Lockwood, 146 Conn. 273, 278, 150 A.2d 215; Schleicher v. Schleicher, 120 Conn. 528, 534, 182 A. 162." Connecticut National Bank v. Chapman, 153 Conn. 393, 399, 216 A.2d 814. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard.
Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564-65,244 A.2d 404 (1968). The doctrine of unjust enrichment is equitable. National CSS, Inc. v. Stamford, 195 Conn. 587, 597,489 A.2d 1034 (1985). "Its three basic requirements are (1) that the defendant w[as] benefitted [benefited], (2) that the defendant unjustly did not pay the plaintiff for the benefits, and (3) that the failure of payment was to the plaintiff['s] detriment." Bolmer v. Kocet, 6 Conn. App. 595, 612-13, 507 A.2d 129 (1986).
There is no evidentiary basis to award damages to BCBS for unjust enrichment under the circumstances of this case. While the court does not condone AMS's failure to notify BCBS that it was canceling its policy, the stipulated facts reveal that AMS obtained no benefit under the policy from BCBS after December 31, 1988. Furthermore, no facts were stipulated to that reveal that BCBS suffered any detriment from AMS's failure to pay premiums for the months of January through March 1989. Finally, in balancing the equities and taking into consideration the terms of BCBS's policy, as discussed in detail above, there appears to be CT Page 9669 no equitable basis to apply the doctrine of unjust enrichment in this case.
Accordingly, since the basic requirements of unjust enrichment have not been proven and it is less than clear that the doctrine provides a basis for recovery in this case, judgment is entered for the defendant on the second count.
In conclusion, judgment is entered for the defendant on both counts.
LINDA K. LAGER, JUDGE