Bhupendra K. SHAH, Plaintiff–Appellant,

v.

**NEW YORK STATE DEPARTMENT OF CIVIL SERVICE, New York State Office of Mental Health, and Nathan Kline Institute for Psychiatric Research, Defendants–Appellees.**

Docket No. 98–7097.

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1998.

Decided Feb. 19, 1999.

---

Bhupendra K. Shah, Pearl River, New York, Plaintiff–Appellant pro se.

Marion R. Buchbinder, Assistant Attorney General, New York, New York (Dennis C. Vacco, Attorney General of the State of New York, John W. McConnell, Deputy Solicitor General, Michael S. Belohlovek, Assistant Attorney General, New York, New York, on the brief), for Defendants–Appellees.

Before: KEARSE, CARDAMONE, and POOLER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff *pro se* Bhupendra K. Shah appeals from a final judgment of the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., *Judge*, dismissing his second amended complaint alleging employment discrimination and retaliation in violation of, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994). The district court dismissed pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure on grounds of failure to exhaust administrative remedies, res judicata, statute

of limitations, and failure to adduce sufficient evidence to make out a prima facie case or to show that defendants' explanations for their hiring decisions were not pretextual. On appeal, Shah principally challenges these rulings; he also contends that he was entitled to a default judgment. We find merit only in his challenge to the dismissal of two claims of retaliation.

## I. BACKGROUND

Shah, a naturalized United States citizen born in India, has a Ph.D. in statistics, was an adjunct professor in the New York State University system, and has published extensively in his field. Defendant Nathan Kline Institute for Psychiatric Research ("NKI") is a research facility operated under the auspices of defendant New York State Office of Mental Health ("OMH"). Shah was employed by NKI as a research scientist from 1973 until 1983, when his employment was terminated as part of widespread layoffs. The present action is one of a series of proceedings in which Shah has challenged his 1983 termination and the subsequent failure of OMH or NKI to hire or re-hire him. *See, e.g., Shah v. New York State Office of Mental Health,* No. 133/88 (N.Y. Sup.Ct. Rockland Co.1989) (refusing to overturn state agency's dismissal of claim of discharge on the basis of race and national origin); *Shah v. State of New York,* 140 Misc.2d 16, 529 N.Y.S.2d 442 (N.Y.Ct.Cl.1988) (dismissing Civil Service Law challenge to the 1983 layoffs); *Shah v. New York,* No. 76165 (N.Y.Ct.Cl., September 30, 1992) (dismissing contract challenge to the 1983 layoffs), *aff'd,* 212 A.D.2d 876, 622 N.Y.S.2d 365 (App.Div. 3d Dep't 1995); *Shah v. Cancro,* No. 89 Civ. 0929 (S.D.N.Y. May 15, 1989) (statute-of-limitations dismissal of claims under 42 U.S.C. §§ 1981, 1983 and 1985, and state law), *aff'd,* 891 F.2d 278 (2d Cir.1989) (table).

In 1992, Shah commenced an action in the district court alleging that OMH had discriminated against him in 1990 by refusing to hire him for the position of Director of Quality Assurance ("DQA"). The responsibilities of the DQA included overseeing the OMH units responsible for risk management in OMH hospitals and preparing OMH hospitals for accreditation surveys; minimum qualifications were to include at least two years' experience with management responsibility for administration of comprehensive quality assurance programs with respect to mental health treatment. Shah's complaint in that action was initially dismissed on statute-of-limitations, res judicata, and collateral estoppel grounds, but he was given leave to replead. *See Shah v. N.Y. State Department of Civil Service,* No. 92 Civ. 898 (S.D.N.Y. June 30, 1992). He filed an amended complaint, which was dismissed in part on grounds of Eleventh Amendment immunity and in part for failure to state a claim on which relief can be granted. *See Shah v. N.Y. State Department of Civil Service,* No. 92 Civ. 898 (S.D.N.Y. March 8, 1993); *Shah v. N.Y. State Department of Civil Service,* No. 92 Civ. 898 (S.D.N.Y. November 19, 1992). This Court affirmed the dismissals. *See Shah v. N.Y. State Department of Civil Service,* 17 F.3d 390 (2d Cir.1993) (table).

Shah commenced the present action in December 1994 against OMH, NKI, and defendant New York State Department of Civil Service, alleging that the defendants had engaged in a pattern of discrimination against him in hiring, promotion, layoffs, and reinstatement, spanning a period of more than 20 years. The second amended complaint included allegations that Shah's 1983 termination resulted from NKI's "illegal activities" (Second Amended Complaint ¶ 6.4); that OMH discriminated against him on the basis of race and national origin in rejecting his application for the DQA position in 1990; and that three refusals by NKI to hire him between 1989 and 1994 were retaliatory.

In an Opinion and Order dated January 16, 1996 ("January 1996 Opinion"), *Shah v. New York State Department of Civil Service,* No. 94 Civ. 9193, 1996 WL 19021 (S.D.N.Y.1996), the district court dismissed most of Shah's discrimination claims pursuant to Fed. R.Civ.P. 12(b)(6) on the grounds that the second amended complaint failed to state a claim on which relief can be granted or stated claims that were untimely or barred by res judicata. The court also dismissed on res judicata and statute-of-limitations grounds the claim that NKI had retaliated against

Shah by refusing to hire him in 1989. The court dismissed Shah's other two retaliation claims, which asserted retaliation by NKI in 1991 and 1994 (hereinafter "Claim 8" and "Claim 9," respectively), pursuant to Fed. R.Civ.P. 12(b)(1) for lack of jurisdiction on the ground that they had not been presented to the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") (collectively "DHR/EEOC"). The court stated that, although Shah had filed an administrative complaint with DHR/EEOC challenging the 1990 failure to hire by OMH, that complaint did not allege discrimination by NKI and hence was insufficient to exhaust his present claims of retaliation by NKI:

> Plaintiff's charge filed with the DHR on February 22, 1990 followed plaintiff's notification of his non-selection for a position by OMH in January of 1990. Plaintiff does not allege that his charge filed with the DHR, and subsequently with the EEOC, included any claims against NKI, nor does he show that his claims against NKI are "reasonably related" to the claims asserted against OMH in his charge filed on February 22, 1990.... Therefore, the district court lacks jurisdiction over these claims, and they are dismissed.

*Shah v. New York State Department of Civil Service,* 1996 WL 19021, at *6 (footnote omitted).

The January 1996 Opinion left pending only Shah's Title VII claim that OMH had discriminated against him on the basis of race and national origin in rejecting his application for the DQA position in 1990. In an Opinion and Order dated December 9, 1997 ("December 1997 Opinion"), *Shah v. New York State Department of Civil Service,* No. 94 Civ. 9193, 1997 WL 769565 (S.D.N.Y. 1997), the district court granted summary judgment dismissing that remaining claim. The court concluded that Shah had failed to adduce sufficient evidence to, *inter alia,* make a prima facie showing that he was qualified for the position. The court noted that Shah's own "application did not reflect that he possessed the two years of management or supervisory experience necessary to meet the minimum requirements for the

DQA position," and that "there was nothing in the plaintiff's background to indicate that he had the management or supervisory experience necessary to fill this position." *Shah v. New York State Department of Civil Service,* 1997 WL 769565, at *4. The court also found that Shah had failed to adduce sufficient evidence to create a genuine issue of fact as to whether the "legitimate, non-discriminatory reasons" offered by the defendants was pretextual, *id.* at *5, and that Shah had

> failed to come forward with sufficient evidence that would lead a rational jury to conclude that Shah was turned down for the DQA position as a result of racial or ethnic animus or racially or ethnically discriminatory policies.

*Id.* at *8. Judgment was entered dismissing the action. Shah's motion for reconsideration was denied, and this appeal followed.

## II. DISCUSSION

On appeal, Shah principally challenges the district court's dismissals of his Title VII claims. As to the dismissal of Shah's Title VII claim against OMH, we affirm principally because, as discussed in the district court's December 1997 Opinion, Shah failed to adduce sufficient evidence to create a genuine issue of fact as to whether the legitimate nondiscriminatory reasons offered by OMH were pretextual. As to the dismissal of Shah's other claims, except Claims 8 and 9, we affirm substantially for the reasons stated in the district court's January 1996 Opinion. As to Claims 8 and 9, we vacate and remand for further proceedings for the reasons that follow.

### A. *Claims 8 and 9 for Retaliation*

 A Title VII claimant may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(e) and (f); *see, e.g., Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994); *Butts v. City of New York Department of Housing Preservation and Development,* 990 F.2d 1397, 1401 (2d Cir.1993) (*"Butts"*). The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge.

See, e.g., Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir.1998). This exhaustion requirement is "an essential element of Title VII's statutory scheme," Butts, 990 F.2d at 1401, and is designed "to give the administrative agency the opportunity to investigate, mediate, and take remedial action," Stewart v. United States Immigration & Naturalization Service, 762 F.2d 193, 198 (2d Cir.1985).

Nonetheless, claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are "reasonably related" to those that were filed with the agency. See, e.g., Butts, 990 F.2d at 1401–02; Owens v. New York City Housing Authority, 934 F.2d 405, 410–11 (2d Cir.), cert. denied, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); Almendral v. New York State Office of Mental Health, 743 F.2d 963, 967 (2d Cir.1984). Such "reasonably related" claims include those "alleging retaliation by an employer against an employee for filing" the underlying claim of discrimination. Butts, 990 F.2d at 1402.

In the present case, the second amended complaint alleged that after OMH notified him in January 1990 that it would not hire him for the DQA position, Shah filed an administrative complaint with DHR/EEOC in February 1990. Shah's Claim 8 asserted that in 1991, when NKI was filling several positions, it did so without advertising or announcing the openings; that NKI used word-of-mouth solicitation of applicants in order to avoid receiving applications from qualified minority candidates; that one of those positions was given to a person whose specialty was similar to Shah's; and that the avoidance of Shah was "a retaliatory act." (Second Amended Complaint ¶ 9.) Shah's Claim 9 alleged that NKI received funding for several new positions for the fiscal year 1994–95, and that Shah asked NKI to hire him for any vacant position. It alleged that NKI proceeded to misrepresent to Shah the number of new positions it had received, that it misdescribed the qualifications needed for any position it would fill, and that its refusal to rehire him was retaliatory.

■ Reading Shah's second amended complaint with the required liberality, see Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594,

30 L.Ed.2d 652 (1972) (per curiam), we conclude that Shah sufficiently alleged in Claims 8 and 9 that the 1991 and 1994 denials of employment by NKI were in retaliation for his February 1990 administrative complaint to DHR/EEOC. The district court properly so construed Shah's pleading; but it ruled that those retaliation claims were not sufficiently related to that administrative complaint because Shah did not show that his DHR/EEOC charge "included any claims against NKI," or "that his claims against NKI are 'reasonably related' to the claims asserted against OMH in his charge filed on February 22, 1990." We are persuaded, however, that a reasonable relationship exists. First, the complaint to DHR/EEOC itself named as a respondent not only OMH but also NKI. Second, NKI concedes that it was aware of Shah's administrative complaint against itself and OMH charging that the denial of the DQA position violated Title VII. Third, there was a close relationship between OMH and NKI. As the district court noted in its opinions, it is undisputed that NKI was operated under the auspices of OMH. And according to the second amended complaint, an NKI official sought to explain NKI's own refusal to hire Shah in 1994 in part by referring to " 'OMH allocations'." (Second Amended Complaint ¶ 10 (quoting NKI letter dated September 19, 1994).) It is hardly farfetched to suppose that an entity such as NKI might refuse to hire a candidate because he had recently brought a discrimination charge against itself and the agency under whose auspices it operates.

In all the circumstances, we conclude that Claims 8 and 9, alleging retaliation by NKI, are reasonably related to the allegations of employment discrimination in the 1990 administrative complaint. Accordingly, we vacate so much of the district court's judgment as dismissed Claims 8 and 9 for lack of jurisdiction. We express no view as to the merits.

### B. The Motion for Entry of Default

■ Shah also contends that he was entitled to a default judgment after defendants failed to answer his second amended complaint and to respond to a motion for

judgment on the pleadings within the time allowed by the rules, or to move for an extension within the time permitted. We disagree.

 "The dispositions of motions for entries of defaults and default judgments ... are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). In the wake of Shah's motion for entry of a default, the court granted defendants extensions of their time in which to respond. *See Shah v. New York State Department of Civil Service*, No. 94 Civ. 9193, 1996 WL 694340 (S.D.N.Y.1996). And in an Opinion and Order dated February 21, 1997, *Shah v. New York State Department of Civil Service*, No. 94 Civ. 9193, 1997 WL 76516 (S.D.N.Y.1997), the court denied the motion for a default. Although critical of defendants, the court pointed out that Shah himself

> ha[d], by his unwillingness to accept any determinations of the Court as final, engaged in behavior that could be termed disruptive of normal court practice and procedures. For this reason and because in this Circuit the preference is for the District Court to reach judgments on the merits and not by way of default judgments, *see, e.g., Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981), the plaintiff's motion for default judgment is denied.

*Shah v. New York State Department of Civil Service*, 1997 WL 76516, at *1. We see no abuse of discretion.

## CONCLUSION

We have considered all of Shah's contentions on this appeal and, except as indicated above, have found them to be without merit. The judgment of the district court is vacated insofar as it dismissed for lack of jurisdiction the retaliation claims described as Claims 8 and 9, and the matter is remanded for further proceedings with respect to those claims. The judgment is in all other respects affirmed.

No costs.