**ALV EVENTS INTERNATIONAL,
et al.**

v.

**Kofi DeGraft JOHNSON.**

**Civ. Action No. 3:10cv201 (SRU).**

United States District Court,
D. Connecticut.

Aug. 20, 2010.

Russell Atkinson Green, Hurwitz, Sagarin, Slossberg & Knuff, LLC, Milford, CT, for ALV Events International, et al.

## MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR JUDGMENT OF DEFAULT

STEFAN R. UNDERHILL, District Judge.

In 2008, ALV Events International ("ALV") approached Kofi DeGraft Johnson for assistance in arranging the appearance of American pop-singer, Justin Timberlake, for a concert in Manila, Philippines. Johnson represented that he could arrange for Timberlake's performance. After paying Johnson substantial deposit and binder fees, and incurring expenses associated with the production of a concert, ALV learned that Johnson did not represent Timberlake and could not secure Timberlake's performance. ALV and The Concert Group bring this action pursuant to this court's diversity jurisdiction as set forth in 28 U.S.C. § 1332 and allege common law claims of breach of contract, unjust enrichment, quantum meruit, negligent misrepresentation, intentional misrepresentation, theft in violation of Conn. Gen.Stat. § 52–564, and violations of Connecticut's Unfair Trade Practices Act ("CUTPA"). Pending is the plaintiffs' motion for judgment of default (doc. # 11) against the defendant filed on May 25, 2010. For the reasons stated herein, the motion for default judgment is granted in favor of ALV and denied with respect to The Concert Group. ALV's damages are calculated below.

## I. Background

Examination of the complaint and the plaintiffs' papers in support of their motion for entry of default judgment discloses the following undisputed facts. ALV is a Philippines corporation and is a promoter of music concerts in the Philippines. Arnold Vegafria is the President of ALV. The Concert Group claims to be a New York corporation with its principal place of business in New York, New York. Gil Chachkes is the President of The Concert Group. In September 2008, Vegafria and ALV events were interested in hiring American pop-singer Rihanna to perform at a concert in Manilla. Vegafria contacted Zanaida Fraley of Asia International Entertainment ("AIE") for information on booking Rihanna. Fraley introduced Vegafria to the defendant who stated that he could book Rihanna as well as Chris Brown for a November 15, 2008 concert. Johnson requested a retainer of $420,000 which was to be paid to Johnson's company, The Leviathan Agency ("Leviathan"). ALV transferred an initial payment of $100,000 and Johnson faxed a confirmation letter on September 25, 2008.

On October 1, 2008, the William Morris Agency notified ALV that it represented Rihanna exclusively and that she would not perform in Manila. ALV was ordered to stop promoting the concert. Johnson then offered to book Timberlake as a replacement. ALV accepted the offer despite Johnson's prior misrepresentation that he could book Rihanna. Vegafria traveled to Las Vegas, Nevada to meet with Johnson and confirm the details of Timberlake's appearance. The Concert Group acted as a sub-agent and facilitated the communications among the parties. It was agreed that ALV would pay Johnson $1,300,000 for Timberlake's appearance. Johnson asked for a $325,000 refundable binder which would become a non-refundable deposit when the plans were finalized.

The parties then entered into a written binder agreement memorializing the arrangement. *See* doc. # 1, ex. A. The $100,000 already paid to Johnson to secure Rihanna's performance was credited and ALV began making payments on the remaining balance.

Relying on Johnson's representations, ALV wired payments to Johnson, either directly to Leviathan or through AIE, in the amounts of $20,000, $20,000, $112,500, $30,000, and $155,000. ALV also placed a $100,000 deposit on a concert venue and incurred other expenses in preparation for the Timberlake concert. After receiving the initial payments from ALV Johnson stopped communication with ALV and its representatives. Vegafria and Chachkes traveled to Leviathan's Connecticut address in an effort to make contact with Johnson. Subsequently, Vegafria and Chachkes learned that Timberlake would not be performing in Manila and that Johnson had always lacked the ability to secure Timberlake's performance.

The plaintiffs commenced this action on February 9, 2010. On March 15, 2010 the plaintiffs effected service pursuant to the Federal Rules of Civil Procedure. On April 14, 2010 the plaintiffs moved for entry of default against Johnson for failure to appear (doc. # 8). The motion was amended on April 15, 2010 (doc. # 9). I granted the amended motion for entry of default (doc. # 9) and directed that a motion for default judgment pursuant to Fed. R.Civ.P. 55(b) be filed. On May 25, 2010 the plaintiffs filed a motion for default judgment against Kofi DeGraft Johnson. On, June 17, 2010 I ordered the parties to appear for a hearing on July 16, 2010 and show cause why a default judgment should or should not be entered against Johnson.

On July 16, 2010, I conducted a hearing on the motion for default judgment. The defendant neither appeared nor submitted

any response whatsoever. I then heard evidence with respect to the plaintiffs' damages. To that end, the plaintiffs submitted: (1) an affidavit by the plaintiffs' attorney regarding attorneys' fees and costs, (2) a summary of money transfers, (3) a summary of production expenses, (4) a summary of travel expenses, (5) testimony of Vegafria, and (6) testimony of Chachkes setting forth the grounds for the plaintiffs' claim for damages, costs and attorneys' fees.

## II. Discussion

### A. *Default Judgment*

■ There is no question that Johnson has failed to appear and otherwise defend this action. The plaintiffs filed their complaint on February 9, 2010. On March 12, 2010 Daniel Whitney of Artus Group Investigative Services, a Connecticut Private Detective Agency, served Johnson by hand. Johnson then failed to appear and to file an answer to the complaint within twenty (20) days after being served and the plaintiffs moved for entry of default. In considering whether or not to grant a motion for default judgment, I may take into account whether the complaint states a valid cause of action. *La Barbera v. Federal Metal & Glass Corp.*, 666 F.Supp.2d 341, 347 (E.D.N.Y.2009). It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the "sound judicial discretion" of the court. *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.) (entry of a default judgment is not as of right, even where the defendant is technically in default), *cert. denied*, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); *Shah v. New York State Department of Civil Service*, 168 F.3d 610, 615 (2d Cir.1999) ("The disposition of motions for entries of defaults and default judgments ... are left to the sound discretion of a district court because it is in

the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."), *citing Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993); *see also* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2685 (3d ed. 1998) (hereafter "*Federal Practice*"). It is also true that "in civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party, *see* Fed. R.Civ.P. 55(b)(2), and the court has considerable latitude in deciding whether to require plaintiff to produce evidence in support of the claims before entering such a judgment." *Bermudez*, 733 F.2d at 21, *citing* 10 *Federal Practice* §§ 2685, 2688 (2d ed.1983); *see also* 10A *Federal Practice* §§ 2685, 2688 (3d ed.1998).

### 1. *The Concert Group*

■ Although Johnson's default is clear, there is not a sufficient basis upon which I can grant default judgement in favor of The Concert Group. The complaint alleges that The Concert Group was an intended third-party beneficiary of the ALV–Johnson arrangement and as a result of Johnson's misrepresentations to ALV, The Concert Group has suffered damages. The Concert Group asserts claims for breach of contract, quantum meruit, negligent and intentional misrepresentation and a violation of CUTPA and seeks $65,000 in damages. The facts set forth in the complaint, however, fail to connect any of Johnson's alleged misconduct to harm suffered by The Concert Group.

The allegations in the complaint, at best, allege that The Concert Group facilitated communications between ALV and Johnson. The complaint does not state that Johnson and The Concert Group had a contractual relationship, nor does the bind-

er agreement between ALV and Johnson make mention of The Concert Group or any commission owed to it. At best, the complaint alleges that The Concert Group acted as a go-between ALV and Johnson. The mere act of facilitating communications between two parties and the fact that, as a go-between, The Concert Group may have formed a belief of the truth of the statements made by Johnson, without more, fails to give rise to any of the causes of action pled. Accordingly, The Concert Group fails to state a claim against Johnson. Furthermore, the claim for $65,000 in expectation damages brought on behalf of The Concert Group is not supported by the facts pled in the complaint nor the evidence submitted in support of damages. Accordingly, the motion for default judgment is denied with respect to counts seven, eight, nine, ten, and eleven of the complaint, which are dismissed, without prejudice, *sua sponte* for failure to state a claim.

### 2. ALV

■■■ With respect to the claims made by ALV in counts one and three through six of the complaint, I find that the facts pled in the complaint form a sufficient basis for granting the motion for default judgment. To the extent that ALV seeks to recover under a theory of unjust enrichment, the claim is necessarily barred. Unjust enrichment is an equitable cause of action. *New Hartford v. Connecticut Resources Recovery Authority,* 291 Conn. 433, 451–52, 970 A.2d 592 (2009). An enforceable contract precludes recovery under a theory of unjust enrichment. *Polverari v. Peatt,* 29 Conn.App. 191, 199, 614 A.2d 484, *cert. denied,* 224 Conn. 913, 617 A.2d 166 (1992). Although pleading in the alternative is common, ALV is entitled to recovery under only one of those alternative claims. *Stein v. Horton,* 99 Conn.App. 477, 485, 914 A.2d 606 (Conn.App.2007). Because I find that ALV can recover its actual damages for breach of contract,

ALV cannot recover for unjust enrichment. I grant ALV's motion for default judgment with respect to counts one, three, four, five and six, albeit with some modification of the relief that ALV requests.

### B. Damages

■■■ Upon entry of a default judgment for "failure to plead or otherwise defend" against a complaint, a defendant admits every "well-pleaded allegation" of the complaint except those relating to damages. *See Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Flaks v. Koegel,* 504 F.2d 702, 704 (2d Cir.1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established unless the amount of damages is liquidated or susceptible of mathematical computation."); *see also Time Warner Cable of New York City v. Barnes,* 13 F.Supp.2d 543, 547 (S.D.N.Y. 1998). The burden of proving damages is on the party claiming them. *24 Leggett Street Ltd. Partnership v. Beacon Indus., Inc.,* 239 Conn. 284, 308–09, 685 A.2d 305 (1996). Connecticut has adopted Comment 1 to the Uniform Commercial Code § 1–106 which states, in relevant part, that "Compensatory damages are often at best approximate; they have to be proved with whatever definiteness and accuracy the facts permit, but no more." *See Bead Chain Mfg. Co. v. Saxton Products, Inc.,* 183 Conn. 266, 279, 439 A.2d 314 (1981). Here, although mathematical precision in calculating damages is not required, the plaintiffs' must still provide the court with sufficient evidence from which a trier can make a fair and reasonable estimate. *24 Leggett Street Ltd. Partnership,* 239 Conn. at 308–09, 685 A.2d 305.

As noted above, I have granted a default judgment in favor of ALV against Johnson with respect to ALV's claims of breach of contract, negligent misrepresentation, intentional or fraudulent misrepresentation, statutory theft in violation of Conn. Gen. Stat. § 52–564, and for violating CUTPA. In its claim for damages, ALV seeks $1,510,310.96 in compensatory damages, treble damages for statutory theft, costs, attorneys' fees as provided for in CUTPA, and interest pursuant to Conn. Gen.Stat. § 37–3a.

### 1.  Actual Costs

With respect to its claims for breach of contract, negligent and intentional misrepresentation, and violation of CUTPA, ALV seeks to recover its actual damages. *See U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692, 696 (2d Cir. 1991) ("Since the purpose of damages for breach of contracts is to compensate the injured party for the loss caused by the breach ... those damages are generally measured by the plaintiff's actual loss...."); *Ridgefield v. Eppoliti Realty, Co.*, 71 Conn.App. 321, 338, 801 A.2d 902, *cert. denied*, 261 Conn. 933, 806 A.2d 1070 (2002) ("[T]he general rule for the measure of damages in contract is that the award should place the injured party in the same position as he would have been in had the contract been performed."); *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 217, 520 A.2d 217 (1987) ("One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."); Conn. Gen. Stat. § 42–

110g(a) ("Any person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice ... may bring an action ... to recover actual damages."). In support of its claims, ALV has submitted receipts of money transfers from it to Leviathan and/or AIE, check vouchers paid by ALV to vendors in preparation for the concert, and evidence of travel expenses.

### a.  Monies Transferred to Leviathan/AIE

■ ALV has submitted evidence purporting to demonstrate $439,000.00 in transfers from it to Johnson through Leviathan and/or AIE.[1] Even though I accept as true that ALV paid Johnson pursuant to the terms of the binder agreement and that those monies where paid out through Leviathan and/or AIE, I am under no obligation to accept as a foregone conclusion that ALV is entitled to its full claim of $439,000. ALV, at the damages stage, bears the burden of providing me with evidence from which I can fashion a damages awards. *See 24 Leggett Street Ltd. Partnership*, 239 Conn. at 308–09, 685 A.2d 305. Doubts about the measure of damages should be resolved in favor of the defaulting party. *Enron Oil Corp.*, 10 F.3d at 95–96. The record before me does not support a finding that ALV is entitled to $439,000, because the transaction records prove only $306,500 in outlays to Leviathan and/or AIE.

■ ALV submitted electronic money transfer records that were presumably intended to total $439,000. *See* July 16, 2010 Hrg., Ex. 1. The records show only payments made from ALV to Leviathan in the amount of $306,500. The discrepancy is explained in that one of the receipts provided is not a record of a transfer from

---

1.  ALV makes no claim for lost profits arising out of Johnson's misconduct.

ALV to Leviathan/AIE but a deposit receipt of $20,000 deposited into ALV's own account. *See id.* at 5. And though the complaint alleges an additional transaction of $112,250 as does the summary on page one of exhibit 1, the record lacks proof substantiating the transfer. Based on the record before me, I find that ALV is entitled to recover only $306,500 from Johnson for funds transferred in reliance on Johnson's initial promise to produce Rihanna and subsequent binder to produce Timberlake for a performance in Manila. Johnson shall pay ALV $306,500.

### b. Reliance Damages

■ ALV also submitted the following evidence in support of its request for $82,391.50[2] in reliance damages.[3] *See* July 16, 2010 Hrg., Ex. 2. ALV, in preparation for the Timberlake performance and in reliance on Johnson's representation that Timberlake would appear, incurred costs associated with preparing for a concert. ALV incurred the following production expenses: (1) $31,689 to Fort Open Ground to secure the venue; (2) $8,450.41 for the production staff; (3) $5,281.50 for press releases; (4) $7,394.11 for stage riggers; (5) $5,281.50 to Video Sonics Corp. Communications; (6) $3,168.90 to Touring Group for generators and gas; and (7) $21,126 to Marvin Buenaventura for stage design. ALV also makes a claim for $16,900.80 paid to Exile for lighting and sound related expenses; however, the voucher submitted in support of the claim fails to indicate the amount paid out by

ALV to Exile. Accordingly, ALV fails to prove that it is owed $16,900.80 for expenses paid to Exile. Because Johnson breached the binder and misrepresented his capacity to secure Timberlake's performance, ALV is entitled to recover its pecuniary loss caused by its justifiable reliance upon the misrepresentation and binder. Johnson shall pay ALV $82,391.50.

### c. Travel Costs

■ ALV also seeks to recover $5,533.43 in expenses it alleges it incurred when Vegafria traveled to Connecticut in an effort to track down Johnson after Johnson failed to return ALV's attempts at communication.[4] *See* July 16, 2010 Hrg., Ex. 3. Vegafria testified that he traveled to Las Vegas, Nevada to meet Johnson on October 31, 2010. When Johnson failed to show, Vegafria and Chachkes then traveled to Connecticut in an effort to track down Johnson. The check vouchers provided in support of the claim are for travel on October 23 and 24, 2008, not the dates of the travel to Las Vegas and Connecticut. Furthermore, the travel vouchers are for travel between Manilla and Las Vegas, not for travel to Connecticut. Accordingly ALV's request for travel expenses is denied because it fails to provide me with sufficient evidence from which I can ascertain travel expenses tied to Johnson's misconduct. *See 24 Leggett Street Ltd. Partnership*, 239 Conn. at 308–09, 685 A.2d 305.

---

2. The check vouchers are in Philippine pesos and were issued on October 15, 2008. Using the Interbank rate, the conversion rate of pesos to U.S. dollars on October 15, 2008 was .02113. *See* Currency Converter, available at http://www.oanda.com/currency/converter.

3. The summary of production expenses reflects a total of 4,700,000 pesos. The check vouchers, however, support only a claim for

3,900,000 pesos. For the reasons articulated above, I accept only the transactions supported by evidence in fashioning the damages award.

4. The claim for travel costs is made in Philippine pesos and has been converted using the same rate set forth above and calculated on the date each voucher issued.

### 2. Statutory Theft

■ ALV also seeks to recover the monies paid to Johnson under a theory of statutory theft. Connecticut law provides that "any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Gen. Stat. § 52–564. The Connecticut Supreme Court has held that statutory theft under § 52–564 is synonymous with larceny under General Statutes § 53a–119. *Deming v. Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771, 905 A.2d 623 (2006). "A person commits larceny within the meaning of General Statutes § 53a–119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. An 'owner' is defined, for purposes of § 53a–119, as any person who has a right to possession superior to that of a taker, obtainer or withholder." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 418–19 n. 14, 934 A.2d 227 (2007). Here, the facts as pled demonstrate that Johnson acted with the intent to permanently deprive ALV of the $306,500 paid pursuant to the binder agreement. Accordingly, ALV is entitled to treble damages.

### 3. Attorneys' Fees

■ Pursuant to Conn. Gen.Stat. § 42–110g, ALV can recover reasonable attorneys' fees. CUTPA authorizes the recovery of attorneys' fees related to the prosecution of the CUTPA claim. *See Jacques All Trades Corp. v. Brown*, 57 Conn.App. 189, 200, 752 A.2d 1098 (Conn. App.2000). It is in the court's discretion to include as part of the attorneys' fee award expenses that are associated with non-CUTPA or unsuccessful claims when the claims as a whole are related or arise out of essentially the same transactions. *See Heller v. D.W. Fish Realty Co.*, 93 Conn.App. 727, 735–36, 890 A.2d 113 (Conn.App.2006).

■ ALV seeks $20,636.34 in fees and costs associated with this action. In order to recover attorneys' fees in this Circuit, the party must support the application with contemporaneous time records of work performed. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). From those records I can determine whether the hours spent on the litigation were "reasonable" so as to warrant full reimbursement. Such records must also "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. Contemporaneous time records are necessary so that I "[m]ay determine the nature of the work done, the need for it, and the amount of time reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987).

■ Russell Green, plaintiffs' counsel, submitted an affidavit concerning fees and costs associated with this action. *See* doc. # 14. The affidavit and supporting documentation demonstrate that ALV has incurred $12,610.50 in attorneys' fees and $3,254.34 in costs for a total of $15,864.84.[5] Although I believe an award of attorneys' fees pursuant to Conn. Gen.Stat. § 42–110g is appropriate in this case, I find that

---

**5.** The affidavit states that plaintiffs incurred $12,382.50 in attorneys' fees. The accompanying contemporaneous time records, however, show that the amount is actually $12,610.50. The time records do not indicate the fees incurred in connection with the July 16, 2010 hearing. Green stated that he would submit those records to the court but has failed to do so.

the requested amount is excessive in light of the plaintiffs' partial success in the litigation. In addition, the contemporaneous records submitted reflect some inefficiency and a significant amount of communication with Chachkes. I therefore reduce the award to reflect a reasonable amount of time spent litigating ALV's claims. I conclude that the record supports an award of $6,878.20 for attorneys' fees and $3,254.34 for costs.

### 4. Interest

Pursuant to Conn. Gen.Stat. § 37–3a, ALV can recover, as damages, interest at a rate of ten per cent a year, for the detention of money after it becomes payable. Prejudgment interest accrues on the trebled amount. *See Suarez–Negrete v. Trotta,* 47 Conn.App. 517, 522, 705 A.2d 215 (Conn.App.1998). Here, the breach occurred on December 5, 2008 when Johnson failed to produce Timberlake. At that time, Johnson was obligated to return the $306,000 to ALV. Because I have found that ALV is entitled to treble damages pursuant to Conn. Gen.Stat. § 52–564, ALV shall recover, as damages, $153,250.00 in interest on the monies that Johnson has wrongfully withheld.

## III. Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Default Judgment against Kofi DeGraft Johnson filed May 25, 2010 [doc. # 11] is hereby GRANTED with respect to counts one, three, four, five and six, and DENIED with respect to counts two, seven, eight, nine, ten, and eleven.

Judgment shall enter in favor of the ALV against Johnson in the total amount of $1,165,274.04. The claims brought by The Concert Group are dismissed, without prejudice, for failure to state a claim. The clerk shall enter judgment and close the file.

It is so ordered.